387 So.2d 567 (1980)
STATE of Louisiana
v.
Donald Reed BROWN.
66195.
Supreme Court of Louisiana.
June 23, 1980.
Rehearing Denied September 12, 1980.
*568 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Leonard Knapp, Jr., Dist. Atty., Terry Johnson, Abbott J. Reeves, Asst. Dist. Attys., for plaintiff-appellee.
Ulysses Gene Thibodeaux, Lake Charles, for defendant-appellant.
DIXON, Chief Justice.[*]
Donald Reed Brown was convicted of armed robbery (R.S. 14:64) and sentenced to fifty years at hard labor. In this appeal he complains that his warrantless arrest in his home was constitutionally deficient and tainted both the line-up which immediately followed the arrest and the subsequent in-court identification by the victim.
We hold that: "unless special circumstances are present, warrantless arrests in the home are unconstitutional" (Payton v. New York, 445 U.S. 573 p. 575, 100 S.Ct. 1371 p. 1374, 64 L.Ed.2d 639); the line-up was a product of the unconstitutional arrest; the in-court identification is clearly free from the taint of the illegal arrest.
On October 9, 1978 Kathy Crocker, working at a convenience store in Lake Charles, was robbed by a young black male with a gun. On November 14, 1978 J. S. Fairfield, a probation officer, received an anonymous telephone call reporting that Donald Reed Brown had committed an armed robbery about five weeks before. Within a couple *569 of days of that call, police Sergeant Hyatt also received a telephone tip, naming Brown as a robber. Fairfield and the police met in the station, discussed the tips, located a report of the October 9 robbery, and prepared a "photo line-up" which included a five or six year old picture of defendant.
On November 20 Ms. Crocker saw the photographs and made a tentative identification, but she would not say positively that the picture was that of the robber.
At 7:48 a. m. on November 22 the police arrested Brown at home in bed, without a warrant. They asked the elderly woman who met them at the door if Donald Reed Brown was there; when she answered yes, and turned to go to his room, the police followed her toward the bedroom. The testimony was that defendant was arrested for parole violation and booked for armed robbery.
On that evening or the next, in a line-up at the jail, the victim positively identified the defendant.
The first assignment of error is directed at the trial court's overruling the motion to suppress the photo line-up and the identification at the physical line-up.
No error is shown in connection with the photo line-up. Defendant's picture was included because of two anonymous tips. The victim failed to make a positive identification of defendant. This failure, in fact, led to the arrest and physical line-up.
The police officers recognized the lack of probable cause for the arrest-they said they lacked a positive identification. They attempted to justify the arrest for the purpose of the line-up as a response to the parole officer's order. The parole officer, however, had no more "reasonable cause" (R.S. 15:574.8 B)[1] to believe the defendant had violated his parole than the police had "probable cause" to believe he had committed a crime. Admittedly "technical" violations (such as failure to notify about job changes, address and associating with felons) each had been the subject of prior interviews between the parole officer and defendant, and each had been explained to the parole officer to his apparent satisfaction.
Even if probable cause to arrest existed, the arrest was illegal. "We . . hold that the Fourth Amendment to the United States Constitution . . . prohibits the police from making a warrantless and nonconsensual entry into a suspect's home in order to make a routine felony arrest." Payton v. New York, supra, page 576, 100 S.Ct. p. 1375. Such a warrantless arrest in a home is also prohibited by Article 1, § 5 of the Louisiana Constitution of 1974.[2] See State v. Ranker, 343 So.2d 189 (La.1977).
Even though the arrest in this case was made in violation of both the state and federal constitutions, and for the purpose of obtaining a positive identification of the defendant (see Davis v. Mississippi, 394 U.S. 721, 89 S.Ct. 1394, 22 L.Ed.2d 676 (1969)), the erroneous ruling on the motion to suppress does not necessarily require the reversal of this conviction.[3] Although the line-up was the product of the illegal arrest, the victim's in-court identification had a source independent from the arrest and was clearly not affected by the line-up. United States v. Crews, 445 U.S. 463, 100 S.Ct. 1244, 63 L.Ed.2d 537 (1980).
*570 Ms. Crocker was in the store alone with defendant from 1:00 a. m. until 1:30 a. m., except for one minute when another customer was in the store. She talked with him, and looked up the phone number of a taxi company. When defendant went outside to use the pay phone he returned, she thought, too quickly, and asked if he could wait for the cab. Ms. Crocker at that moment concluded that a robbery was imminent.
Defendant asked about cold medicine, asked more questions, including whether Ms. Crocker was afraid, working all alone late at night. The victim continued to busy herself with cleaning and restocking in the store, following the precautionary instructions she had received from her employer. When the inevitable gun appeared, she screamed. The money was placed in the sack, and she was herded to the back of the store, near a bathroom door. She refused to disrobe, and, after being threatened with a gun in her face, told defendant, "You're just going to have to shoot me to get my clothes off."
Defendant relented when the victim showed him a place where he could lock her up, and took his departure. When the police responded to her call, her description was complete and apparently accurate. Nothing in her testimony indicated that her identification had any source other than the robbery itself. There was no error in admitting the in-court identification.
Defendant's final complaint is the severity of the fifty year sentence. The trial judge reviewed his juvenile record, his adult probation for receiving stolen goods, a fifteen year prison sentence for two counts of distribution of heroin and eleven counts of forgery, from which he was on parole at the time of the instant robbery. The sentence is not excessive, in view of defendant's record and the serious nature of the offense.
The conviction and sentence are affirmed.
NOTES
[*] Honorable Richard H. Gauthier, Judge, Thirty-fourth Judicial District, participated in this decision as an Associate Justice Ad Hoc.
[1] ". . . After consideration of the written report, the chief probation and parole officer shall, with all practicable speed, make a preliminary determination, and shall either order the parolee's release from detention or proceed promptly in accordance with R.S. 15:574.7." R.S. 15:574.8 B.
[2] "Every person shall be secure in his person, property, communications, houses, papers, and effects against unreasonable searches, seizures, or invasions of privacy. No warrant shall issue without probable cause supported by oath or affirmation, and particularly describing the place to be searched, the persons or things to be seized, and the lawful purpose or reason for the search. Any person adversely affected by a search or seizure conducted in violation of this Section shall have standing to raise its illegality in the appropriate court." Article 1, § 5, La. Const. of 1974.
[3] The prosecution, of course, does not depend on a valid arrest, and the motion to quash was properly overruled.