396 So.2d 1242 (1981)
STATE of Louisiana
v.
James W. FRIDDLE.
No. 80-K-1593.
Supreme Court of Louisiana.
March 24, 1981.
*1243 Samuel S. Dalton, Dalton, Gillen & Roniger, Jefferson, for defendant-relator.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Harry F. Connick, Dist. Atty., Bridget Bane, William R. Campbell, Jr., Asst. Dist. Attys., for plaintiff-respondent.
CALOGERO, Justice.[*]
We granted defendant's application for writs in this case to determine whether the district court erred in denying defendant's pre-trial motions to suppress certain evidence obtained as a result of his arrest. Defendant James Friddle was charged by grand jury indictment on August 2, 1977 with two counts of aggravated rape in violation of R.S. 14:42.[1] He was tried before a jury and found guilty of one count of aggravated rape and one count of attempted aggravated rape, but on February 23, 1978, the trial court granted defendant's motion for a new trial. Thereafter, defendant reurged his earlier denied motions to suppress evidence. The motions were denied and that denial is what we now review, pre-trial.
Certain testimony from defendant's first trial and stipulated facts form the evidence considered by the trial judge in connection with the motions to suppress. The following events are gleaned from that evidence.
On January 3, 1977, a woman, whom we shall refer to as Mary Smith for the purposes of this opinion, was raped at gunpoint in her apartment. She reported the rape to the police and gave them a description of her assailant. Later that day, Officer David testified that he "received information" which prompted him to begin searching for a silver automobile with a red license plate bearing the numbers EWP304. Around midnight on the same day, a silver *1244 Continental with a red and white license plate bearing the numbers EWP304 was observed by two police officers in the eight hundred block of St. Louis Street in New Orleans. After parking their car and returning on foot to the area where the car was spotted, the officers found that the vehicle was gone.
The automobile was later located at about 1:15 a. m., on January 4, 1977, at the Tamanaca Motel, 1725 Tulane Avenue. The license plate check made by the officers revealed that the automobile was owned by one James Friddle. The officers then checked with the motel manager and learned that James Friddle was staying in Room 269. Mr. Friddle had been an occupant of that room since November 15, 1976, approximately a month and a half. Whether or not the officers knew of the length of defendant's stay at the motel is uncertain, but it would have been easily ascertainable from the motel manager.
The police officers contacted headquarters to request assistance, and at approximately 2:00 a. m. on January 4, 1977, five plain-clothes officers and one uniformed officer proceeded to Room 269, knocked on the door and announced "Police". The defendant, James Friddle, opened the door. Officer David testified that he asked the man if he was James Friddle and whether he owned the silver Continental with the Arkansas plates. When the defendant responded affirmatively to both questions, he was placed under arrest and advised of his rights.
Defendant was wearing only a pair of blue jeans when he answered the door. Therefore, he was escorted inside of his motel room, after being placed under arrest, so that he could get dressed. In the bathroom, Officer David observed clothing which he thought matched the description given by the rape victim, Mary Smith, of the clothing worn by her assailant. These items were seized. An inculpatory statement was allegedly made at this time by the defendant while he was in the bathroom. Thereafter, while still in the motel room, defendant signed a rights of arrestee form waiving his rights. He thereupon informed the officers that he had a gun in the locker of his room. It was also seized.
Finally, the defendant was transported to the Criminal Investigation Division where he was booked at 3:00 a. m. He made an oral statement and gave a written statement after again being advised of his rights. Later that day defendant was brought before a magistrate where a lawyer with the Orleans Indigent Defender Program was appointed to represent him. Bail was set for some of the charges but denied for the capital rape offense and a preliminary hearing was set for January 11, 1977.
On January 7, 1977, a five man line-up was conducted with defendant unrepresented. Therein, defendant was identified by the two victims of the offenses with which defendant has been charged herein.
Defendant and the state stipulated that the arresting officers had no warrant for defendant's arrest and had not been advised that any warrants were outstanding. (In fact, no warrants existed relative to the defendant or his automobile.) The state further stipulated that defendant's arrest was made as he stood in his motel doorway and all inculpatory statements by defendant were made following this arrest except for his admitting his name and that he owned the automobile in question.
We granted writs in this case from the trial court ruling denying defendant's motions to suppress primarily to consider whether defendant's arrest at 2:00 a. m. at his motel residence without a warrant was in violation of the recent United States Supreme Court case of Payton v. New York, 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980).
Defendant, relying on the Payton case, contends that an arrest made in one's residence without a warrant, barring the existence of some exigent circumstance, is illegal. Therefore, defendant seeks to suppress the following evidence as fruits of the illegal arrest: the clothing seized from the bathroom, the gun, and any other items seized from either his motel room or his car *1245 at the time of the arrest; the inculpatory statement he made to the officer in the bathroom; both the oral and written statements he made at the police station; the line-up identifications; and any in-court identifications.
In Payton v. New York, supra, the United States Supreme Court directly addressed for the first time the question of whether a warrant was required to arrest a citizen in his home. Therein the Court held:
"It is a `basic principle of Fourth Amendment Law' that searches and seizures inside of a home without a warrant are presumptively unreasonable.... In terms that apply equally to seizures of property and to seizures of persons, the Fourth Amendment has drawn a firm line at the entrance to the house. Absent exigent circumstances, that threshold may not reasonably be crossed without a warrant."
Payton was decided on April 15, 1980 and it is clear that, in accordance with that decision, any arrest made thereafter of a person in his home without a warrant and without the existence of exigent circumstances will be unreasonable and, as such, unconstitutional. Similarly, in State v. Brown, 387 So.2d 567 (La.1980), decided on June 23, 1980, this Court held that a warrantless entry into a defendant's home for the purpose of an arrest was, under Article 1, Section 5 of the Louisiana Constitution of 1974, constitutionally invalid unless such entry was made necessary by exigent circumstances. However, we are here confronted with an arrest that was made at least three years prior to the rendition of either Payton or Brown, when such an arrest was specifically authorized by Article 213 of the Louisiana Code of Criminal Procedure.[2] Therefore, we must decide whether Payton and Brown should be applied retroactively to void this arrest, making the evidence obtained pursuant thereto inadmissible at defendant's forthcoming trial.
The question of the retroactivity of Payton has not yet been directly considered by this Court. While State v. Brown, supra, relied on the principles set out in Payton to conclude that the Louisiana Constitution of 1974 likewise prohibited warrantless arrests in the home absent exigent circumstances, it did not hold that Payton would be applied retroactively to arrests made prior to its rendition. In State v. Smith, 392 So.2d 454 (La.1980), we suggested in dicta that Brown would not be applied retroactively but, because Smith dealt with the arrest of a person in the home of a third party, the question of the retroactivity of Payton was not before the Court.
Nor has the United States Supreme Court precisely determined whether Payton should be applied retroactively. However, in United States v. Peltier, 422 U.S. 531, 95 S.Ct. 2313, 45 L.Ed.2d 374 (1975), that Court noted that the deterrent function of the exclusionary rule is not served by retroactive application to situations in which officers acted in good faith reliance on previously announced standards. The Court stated:
"[it] is indisputable ... that in every case in which the court has addressed the retroactivity problem in the context of the exclusionary rule, whereby concededly relevant evidence is excluded in order to enforce a constitutional guarantee that does not relate to the integrity of the fact finding process, the court has concluded that any such new constitutional principle *1246 would be accorded only prospective application."
In Peltier, the Court was presented with the question of whether to give retroactive application to its decision limiting border patrol searches. The Court therein upheld searches which were conducted pursuant to previously announced regulations that, although not declared invalid at the time of the search, were later declared unconstitutional infringements of the Fourth Amendment.[3]
We believe the same result should obtain here where the question involved, the constitutionality of a warrantless arrest in the home, is not one that "relates to the integrity of the fact finding process," or the fairness of the trial. Additionally, we do not feel that retroactive application of these decisions, thereby mandating the suppression of the evidence obtained pursuant to the arrest, would serve the deterrent function of the exclusionary rule. As stated above, the officers were acting in good faith pursuant to what they believed to be a valid statute, C.Cr.P. art. 213. For the foregoing reasons, we hold that neither Payton v. New York, supra, nor State v. Brown, supra will be given retroactive effect to mandate the suppression of the evidence seized as a result of this defendant's arrest.
Defendant argues in the alternative that if we find that the evidence is not to be suppressed as a fruit of the illegal arrest, then the line-up identifications should nevertheless be suppressed because conducted in the absence of counsel after adversary criminal proceedings had been initiated against him and further, because the line-up was unreasonably suggestive. Defendant also contends that any in-court identification should be suppressed because tainted by the improper line-up identification.
Initially, defendant seeks to establish that his due process rights were violated because his line-up was conducted without counsel's presence.
Defendant was arrested on January 4, 1977. Later that day he was brought before a magistrate, at which time, an attorney with the Orleans Indigent Defender Program was appointed to represent him and bail was set for some of the charges but denied for the capital rape offense. A preliminary hearing was thereupon scheduled for January 11, 1977.
On January 7, 1977, a five man line-up was conducted with defendant unrepresented. Therein defendant was identified by the rape victims. Defendant seeks to suppress any testimony relating to this line-up identification.
In support of his argument that he was entitled to counsel at the line-up stage of the proceedings, defendant principally relies upon United States Supreme Court decisions concerning the right to counsel at a line-up confrontation. The defendant cites extensively from Moore v. Illinois, 434 U.S. 220, 98 S.Ct. 458, 54 L.Ed.2d 424 (1977).
In Moore, the Court noted that Kirby v. Illinois, 406 U.S. 682, 92 S.Ct. 1877, 32 L.Ed.2d 411 (1972) had made it clear that the right to counsel attaches to corporeal identifications conducted "at or after the initiation of adversary judicial criminal proceedings whether by formal charge, preliminary hearing, indictment, information, or arraignment." The Court in Moore therefore concluded that an identification made at the defendant's preliminary hearing should have been excluded because the defendant was not represented by counsel and the preliminary hearing clearly marked the initiation of adversary judicial criminal proceedings.
This Court has consistently held that a person accused of a crime is not entitled to counsel at a line-up prior to indictment. State v. Kelly, 362 So.2d 1071 (1978); State v. Fields, 342 So.2d 624 (La.1977); State v. Johnson, 327 So.2d 388 (La.1976); State v. Hargrove, 330 So.2d 895 (La.1976); and State v. Maduell, 326 So.2d 820 (La.1976). *1247 These cases rely on Kirby v. Illinois, supra, to support their holding. Moore has seemingly extended Kirby by holding that defendant therein was entitled to an attorney at an identification during his preliminary hearing, finding that the preliminary hearing marked the initiation of adversary judicial criminal proceedings. We see no reason to extend the Moore holding to this line-up which was conducted prior to the preliminary hearing.
Furthermore, in the present case, defendant was arrested on January 4, 1977. The line-up was held on January 7, 1977 and defendant's preliminary hearing was not scheduled until January 11, 1977. Nor had defendant been indicted prior to the line-up. Additionally, two police officers testified that the Orleans Indigent Defender Officer had been contacted and informed of the state's intention to conduct this line-up, but no one from the office attended the line-up. Therefore, we hold that defendant's due process rights were not violated in this case by this uncounseled line-up.
Next, defendant argues that the line-up identifications should be suppressed because the line-up was suggestive. He contends that the line-up was so suggestive that any identification made therein would necessarily be unreliable.
It has been held that although the line-up procedure may have been suggestive the out-of-court identification or an in-court identification may nevertheless be admissible at trial if the totality of the circumstances indicates that the identifications are reliable. Neil v. Biggers, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972); State v. Johnson, 389 So.2d 1318 (La.1980), and State v. Guillot, 353 So.2d 1055 (La.1977). It is the likelihood of misidentification that violates due process and the following five factors articulated in Manson v. Braithwaite, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977), have been repeatedly used by this Court in determining the reliability of an identification:
"... the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of his prior description of the criminal, the level of certainty demonstrated at the confrontation, and the time between the crime and the confrontation. Against these factors is to be weighed the corrupting effect of the suggestive identification itself."
State v. Stewart, 389 So.2d 1321 (La.1980); State v. Davis, 385 So.2d 193 (La.1980); State v. Doucet, 380 So.2d 605 (La.1979); State v. Williams, 375 So.2d 364 (La.1979); and State v. Guillot, 353 So.2d 1005 (La. 1977).
In ruling against defendant, and evidently concluding that the line-up was not suggestive, the trial judge did not consider the five factors set out above for determining whether there is an independent source for the identification. Because we are troubled by the possible suggestiveness of the line-up,[4] we believe that the independent sources for the identifications must be considered and the trial judge has not yet considered them. Therefore, we set aside the trial court's ruling denying defendant's motion to suppress the line-up identifications and remand the case to the trial court for retrial of the suppression motion as relates to suggestiveness and any independent source for the identifications.
Defendant argues separately that the in-court identifications should be suppressed at the forthcoming trial because tainted by the unreasonably suggestive line-up.
Having found no illegality as relates to the line-up identification, the trial court in ruling on this issue had no reasons to, and therefore did not, focus upon whether the in-court identifications were based on an independent source rather than the line-up, and thus the factors set out above, as articulated in Manson, were not considered. The ruling denying the motion to suppress *1248 the in-court identification must for this reason also be set aside and remanded for retrial and/or reconsideration in accordance with the above views.
Finally, and in further support of defendant's effort to suppress the items seized on the night of his arrest, his oral and written inculpatory statements, the line-up identifications and the in-court identifications, defendant argues that his arrest was illegal because made without probable cause.
The relevant facts already stated hereinabove were the following:
On January 3, 1977, Ms. Smith was raped at gunpoint in her apartment. She reported the rape to the police and gave them a detailed description of her assailant. Later that day Officer David testified that he "received information" which prompted him to begin searching for a silver automobile with a red license plate bearing the numbers EWP304. The automobile was eventually located at the Tamanaca Motel at about 1:15 a. m. on January 4, 1977. After making a license plate check, the officers determined that the automobile was owned by one James Friddle. They also discovered
that a James Friddle was registered at the motel and was residing in Room 269. The officers went to Room 269 and when defendant answered the door and told the officer he was James Friddle and that he owned the silver car with the red plates he was placed under arrest.[5]
As indicated earlier there was no presentation of witnesses at the hearing on the motion to suppress. The facts recited above are gleaned from the stipulations agreed to by both the state and defendant and of selected portions of certain witnesses' testimony transcribed from defendant's original trial. From this selected testimony there is no connection made between the rape and the reason the officers were looking for the silver car with the red plates. However, the trial judge who ruled on the present motions to suppress had already conducted a full trial in this case as well as several hearings on various defense motions, including a motion to suppress, and therefore surely had knowledge of all the prior testimony including additional facts which may have borne on the question of the probable cause for the arrest.[6] We are, *1249 therefore, not prepared to find an absence of probable cause and order the evidence suppressed on the state of this record. However, fairness dictates that until the record is complete, enabling proper review of the issues, we should not affirm the trial court's ruling denying the suppression.
For the reasons stated above, we deem it preferable to set aside the ruling of the trial court and remand the case for retrial of the motion to suppress relative to the issue of probable cause to arrest. State v. Haynie, 395 So.2d 669 (La.1981). At such time after remand as we may be called upon to review the trial court's ruling, we will be provided with a complete record from which to determine whether probable cause existed for the arrest.
For the foregoing reasons we hold that several of defendant's attacks on the trial court's ruling denying the motions to suppress are without merit. Payton will not be applied retroactively to void the warrantless arrest of defendant in his motel room. Nor does the absence of counsel at defendant's line-up prohibit the admission of the line-up identifications for that reason. However, we nonetheless set aside the trial court's ruling denying the suppression of the items seized at the time of the arrest, the oral and written inculpatory statements, the line-up identifications and the in-court identifications and remand the case for retrial on the issues of probable cause to arrest, suggestiveness of the line-up and independent sources for the out-of-court as well as the in-court identifications.

Decree
For the foregoing reasons the ruling of the trial court denying defendant's motions to suppress is set aside and the case is remanded for further proceedings in accordance with the views expressed herein.
REVERSED AND REMANDED.
DENNIS, J., dissents in part, concurs in part and will assign reasons.
WATSON, J., concurs in the result.
NOTES
[*] Judges Cecil C. Cutrer, Jimmy M. Stoker, and Ned E. Doucet, Jr., of the Court of Appeal, Third Circuit, participated in this decision as Associate Justices ad hoc, joined by Chief Justice John A. Dixon, Jr. and Associated Justices Pascal F. Calogero, Jr., James L. Dennis, and Jack C. Watson.
[1] The charged crimes were alleged to have been committed against two different victims on separate occasions, approximately three months apart.
[2] Code of Criminal Procedure Article 213 provides as follows:

"A peace officer may, without a warrant, arrest a person when:
(1) The person to be arrested has committed an offense in his presence; and if the arrest is for a misdemeanor it must be made immediately or on close pursuit;
(2) The person to be arrested has committed a felony, although not in the presence of the officer;
(3) The peace officer has reasonable cause to believe that the person to be arrested has committed an offense, although not in the presence of the officer; or
(4) The peace officer has received positive and reliable information that another peace officer holds a warrant for the arrest.
A peace officer in close pursuit of a person to be arrested, who is making an arrest pursuant to this article may enter another jurisdiction in this state and make the arrest."
[3] See also Linkletter v. Walker, 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1965), holding that Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961) (making the exclusionary rule applicable to the states) would not be given retroactive effect.
[4] We prefer to pretermit determining whether in fact the line-up was impermissibly suggestive in light of our remand for consideration of whether the witnesses have an independent source for their identifications. However, we note that defendant is the only man in the line-up without a mustache and with short hair.
[5] An incidental question presented in this case is whether defendant's admission of his name and his ownership of the silver car, in response to questions asked him by the police officers at his door, should be excluded from our consideration in determining whether the officers had probable cause to arrest defendant because the questions were not preceded by Miranda warnings. Miranda does not require that warnings be given before a person, even a suspect, can be asked his name. As for the second question, the officers had already run a license check on the car and knew that it was owned by James Friddle. Thus, defendant's response that he did own the car added nothing to the probable cause information that the officers had or did not have at the time.
[6] From the selected testimony comprising the record for these motions, it appears that the police officers were prevented from giving the testimony that would have linked the defendant and his car to a crime because of a possible Prieur violation. Apparently, the link is established through defendant's involvement in a crime other than the two with which he is charged herein. Evidence of other crimes is not admissible at trial before the jury and the testimony by the officers relating to such other crimes evidence was properly excluded at the trial. State v. Prieur, 277 So.2d 126 (La.1973). However, such evidence is admissible at a hearing on a motion to suppress and should be considered in determining whether there was probable cause to arrest.

Additionally, it appears that the trial testimony of another witness, Michelle Baylis, was likewise interrupted by a Prieur objection and that the probable cause for the Friddle arrest just might be established from a complete rendition by her of the facts of which she was aware in a new hearing on a motion to suppress. Her trial testimony, at best, provides a scant reference to possibly suspicious activity at her residence by the driver of a silver car with a red and white license plate. The witness' testimony was first interrupted after she had simply stated that she heard what she thought was her door being opened with keys and assumed it was her husband coming home. Later, in rebuttal testimony, when she was asked if anything unusual happened on January 3, 1977, she replied, "Yes, I heard someone at my door. I looked through the peephole and I saw a man walking away...." She testified that she saw the man get into his car and drive away. She scribbled notes at that moment on the back of an envelope and later turned them over to the police. The writing on the envelope, which was introduced into evidence as S-26, provided the following, as read into the record by Ms. Baylis: "EWP304, red license plate on white, large silver car, guy in hooded grey sweatshirt." No description of the man was included on the envelope, nor does the testimony reveal that one was verbally given to the officers.
Because of the scant nature of this testimony, there is no link between the man she saw through the peephole walking away and any attempt by him to open her door, although we might surmise that this was one and the same incident to which she was referring. In any event, these facts do not establish the commission of a crime upon which probable cause to arrest might be based. Furthermore, even if we felt that the above facts did establish criminal activity, since no description of the man was given to the police by Ms. Baylis, the evidence would seem to fall short of establishing probable cause to arrest not a described subject but whomever might be the registered owner of the described car.