466 So.2d 1356 (1985)
STATE of Louisiana,
v.
Peter J. GUARISCO.
No. CR84-653.
Court of Appeal of Louisiana, Third Circuit.
April 10, 1985.
*1358 Paul J. De Mahy, St. Martinville, for defendant-appellant.
J. Phil Haney, Asst. Dist. Atty., St. Martinville, for plaintiff-appellee.
Before GUIDRY, LABORDE and YELVERTON, JJ.
GUIDRY, Judge.
Peter J. Guarisco, Jr., was charged by bill of information with possession of a controlled dangerous substance (cocaine) with intent to distribute, in violation of La.R.S. 40:967-A(1). Defendant Guarisco was found guilty as charged by a twelve person jury and was sentenced to serve eight (8) years at hard labor. Defendant appeals on the basis of eight assignments of error.

FACTS
On June 14, 1983, a confidential informant working with the state police contacted John May in regard to the purchase of one-half (½) ounce of cocaine. May thereafter contacted defendant Guarisco, from whom he had purchased cocaine on a prior occasion. Defendant informed May that he could get the cocaine for his friend (the informant), but that he would have to go to New Orleans to do so. On the following day, defendant called the informant from New Orleans and informed him that he had obtained the cocaine and was enroute back to the Morgan City area. When defendant returned to his residence in Stephensville, he again called the informant and explained to him where the cocaine could be picked up.
The state police, with the assistance of local authorities, wired the informant for sound and set up surveillance of defendant's mobile home. Once inside, the informant signaled the police of the presence of cocaine in the mobile home. As the informant left the mobile home, presumably to obtain some money out of his car, the police officers entered and secured the premises. No arrest warrants had been procured by the officers at this time.
After the trailer and its seven occupants were secured, two of the police officers left to obtain a search warrant. A search warrant was issued based on the information from the confidential informant and the observations made by the officers upon entering the mobile home. Upon returning with the search warrant, defendant's mobile home was searched and cocaine was found therein.
On appeal, defendant sets forth eight assignments of error. We need only examine five of these since three were not briefed and are therefore considered abandoned. State v. Dewey, 408 So.2d 1255 (La.1982); State v. Crawford, 441 So.2d 813 (La.App. 3rd Cir.1983). We will consider the following assignments of error in the order set forth below:
1. The trial court erred in denying defendant's motion to suppress evidence;
2. The trial court deprived defendant of his right to full voir dire examination when it precluded defense counsel from examining prospective juror, Newell J. Olivier, on his voir dire;
3. The trial court erred by allowing evidence of criminal activity by the defendant which allegedly occurred in 1977 and 1978;
4. The trial court erred by allowing evidence of statements allegedly made by defendant after his arrest without being advised of his rights to remain silent and to have an attorney; and,
5. The trial court erred in allowing the introduction of statements allegedly made by defendant which were not included in the La.C.Cr.P. Art. 768 Notice.

ASSIGNMENT OF ERROR NO. 1
Through this assignment of error, defendant contends that the trial court erred in denying his motion to suppress evidence seized as a result of the search of defendant's mobile home. Defendant asserts that such evidence was the result of an illegal search and therefore not admissible at trial.
In Payton v. New York, 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980), the Supreme Court held that in the absence of special circumstances, warrantless arrests *1359 in the home are unconstitutional. The Louisiana Supreme Court adopted Payton and held that Article 1, § 5 of the Louisiana Constitution of 1974 also prohibited warrantless, non-exigent arrests in the home, in State v. Brown, 387 So.2d 567 (La.1980).
One might argue that special (exigent) circumstances justified the warrantless, nonconsensual entry into the defendant's home. However, exigent circumstances cannot justify an entry if created by the government. United States v. Thompson, 700 F.2d 944 (5th Cir.1983).
Considering the facts of this case, whatever exigency that existed was likely created by the government. The officers had probable cause and sufficient time to obtain the necessary warrants prior to the entry and arrest. Moreover, the situation presented does not appear to have required prompt action.[1]
Even if the original entry into the home and arrest were illegal, such illegality would not of itself void a subsequent conviction. Gerstein v. Pugh, 420 U.S. 103, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975); State v. Jenkins, 338 So.2d 276 (La.1976).
In State v. Brown, 395 So.2d 1301 (La. 1981), the Supreme Court held that, even in the event of an illegal in-home arrest, evidence which is seized pursuant to a subsequently secured search warrant is not necessarily tainted by the illegal arrest, absent any claim that the information contained in the warrant was derived from prior illegal police action.
Defendant fails to raise as an issue any claim that the information contained in the affidavit supporting the search warrant was derived from the illegal entry and arrest by the police, although there is evidence that the warrant was in part based on such arrest. Nonetheless, the court in Brown, supra, stated:
"Defendant puts forth no claim the information contained in the search warrant was derived from any prior illegal police action and must therefore have been excised..."
This implies that when information derived from prior illegal police action has been included in the affidavit for a search warrant, the proper solution is to excise it and re-test the affidavit for probable cause.
Excising the information derived from the illegal entry and arrest, we find that the affidavit contains sufficient information to establish probable cause supporting issuance of the search warrant. Therefore, the search warrant was valid and the evidence seized pursuant to such was properly admitted into evidence by the trial court.
This assignment of error lacks merit.

ASSIGNMENT OF ERROR NO. 2
Defendant claims that he was deprived of his right to full voir dire examination. He contends that the trial judge should not have granted the prosecution's challenge for cause without giving defendant a chance to rehabilitate a prospective juror.
During the voir dire examination, the trial court granted the prosecution's motion to excuse Newell J. Olivier for cause and refused to allow the defense attorney to examine him. We except the pertinent portion of the voir dire:
"Q. How do you feel about the law that says it's illegal to possess cocaine or possess it with intent to distribute?
A. Just possess, I don't believe, you know
Q. You feel like that someone should be able to possess cocaine?
A. Yes.
Q. If it's for their own personal use?
A. Yes.
Q. Well, I believe, if I'm not mistaken, The court has provided me with a copy of the instructions by The Court, and one (1) of the responsive verdicts in this particular case, that's one (1) of the possible verdicts you can return besides *1360 "guilty of possession with intent to distribute" is "guilty of possession of cocaine". I would take it by your philosophy, or your feelings, that if that's all you felt Mr. Guarisco was guilty of, that you would not be able to find him guilty of possessing cocaine?
A. No.
Q. Have you given it a lot of thought about someone's right to possess a substance that the law says is illegal?
A. Yes.
Q. So, if the evidence was there and was presented to you, and there was no doubt that he was guilty of possessing cocaine, you would not be able to find him guilty of possession of cocaine?
A. No.
Q. No matter how strong the evidence was?
A. No.
Q. Even if you were convinced beyond all reasonable doubt that he did, in fact, possess cocaine, you would not be able to vote for a finding of guilty?
A. No.
Q. Would you vote automatically for "not guilty"?
A. I couldn't make judgment. No. At all.
Q. No matter how strong the evidence was, you couldn't do it? You would not be able to vote at all, is that what you're telling me?
A. Yes sir.
MR. HANEY:
Your Honor, the State would tender a challenge to Mr. Olivier."
The trial judge thereafter informed Olivier of the applicable responsive verdicts a jury could render in the case and further questioned him regarding his ability to apply the applicable law to the instant situation. The following dialogue thereafter transpired:
"A. I'm not sure. I'm notlike just possession, no. But, distributing
THE COURT:
Q. Well, what is it aboutyou don't believe that the law is a good law, that prohibits people from possessing these drugs?
A. Well, you're paying for an amount, and you know, it's
Q. I'm going to charge you that the amount is immaterial. It doesn't make any difference what the amount is.
A. If it's personal or it's, you know, distributing.
Q. Well, I'm telling you you must know this. The law makes it a crime in this State to possess cocaine in any quantity period.
A. Well, I can't judgement (sic) that, no, I just couldn't.
Q. Why?
A. Ah, I couldn't meet that.
Q. You can go. The charge isYou would not be able to do that under any circumstances?
A. No.
Q. All right you can go."
Defendant complains that because defense counsel was thereafter denied an opportunity to question Olivier, he was denied his right to full voir dire examination. He contends that he should have been given the right to rehabilitate Olivier.
The State may challenge a juror for cause on the ground that the juror is biased against the enforcement of the statute charged to have been violated, or is of the fixed opinion that the statute is invalid or unconstitutional. La.C.Cr.P. Art. 798. In view of the above dialogue, it is clear that Olivier was biased against the enforcement of the statute and questioned the validity of the statute defining the crime of simple possession of cocaine. Having convinced himself of this fact, the trial judge denied defendant the chance to question Olivier.
Defendant relies on the case of State v. Claiborne, 397 So.2d 486 (La.1981) for support of his right to full voir dire examination. In Claiborne, supra, the Supreme Court held that:
". . .
when a defense attorney is precluded from voir dire examination of a prospective juror which may have demonstrated *1361 the juror's ability to render an impartial verdict, the granting of a prosecution challenge for cause by the trial court deprives an accused of his right to full voir dire examination."
Claiborne is clearly distinguishable from the instant case. In Claiborne, at issue was the ability of a prospective juror to be impartial. In the instant case, the juror was challenged on the ground that he was biased against the enforcement of the statute and had a fixed opinion that the statute was invalid or unconstitutional. The ability of a defense attorney to rehabilitate and establish impartiality is much different from the ability to change a prospective juror's biased or fixed opinion against a statute.
In the present case, there was no indication whatsoever that Olivier could have been rehabilitated. When asked by the court whether he would be able under any circumstances to find the defendant guilty of simple possession, a responsive verdict, he responded unequivocally that he could not.
A trial judge is vested with broad discretion in ruling on challenges for cause and his ruling will not be disturbed on appeal absent a showing of abuse of that discretion. State v. Sugar, 408 So.2d 1329 (La.1982). We find no such abuse of discretion in the instant case. Allowing any further questioning of Olivier by the defendant would only have delayed the inevitable granting of the challenge.
This assignment of error lacks merit.

ASSIGNMENT OF ERROR NO. 3
In this assignment, defendant urges that the trial court erred in allowing into evidence testimony concerning defendant's prior criminal activity in the years 1977 and 1978.
Generally, evidence of other crimes is inadmissible because the probative value as to the defendant's guilt of the charged offense is outweighed by the prejudicial effect. State v. Gaines, 340 So.2d 1294 (La.1976); State v. Prieur, 277 So.2d 126 (La.1973). However, when the evidence offered has independent relevance, the general rule of exclusion is inapplicable, and the test of admissibility is then one of weighing the probative value against the prejudicial effect. State v. Humphrey, 412 So.2d 507 (La.1982). Even where the other crimes evidence does not have independent relevance, it may still be admissible if the defendant chooses to pursue the defense of entrapment. State v. Batiste, 363 So.2d 639 (La.1978).
Defendant contends that the trial judge failed to apply the proper standard in determining the admissibility of the evidence of other crimes. The trial judge relied on the standard as set forth in State v. Batiste, supra, based on the fact that defendant urged the defense of entrapment. In Batiste, the Supreme Court set forth a three-fold test for determining the admissibility of other crimes evidence to rebut a defense of entrapment. The factors, as set forth in Batiste, are as follows: (1) the other crimes evidence must be of a similar character of the offense for which the defendant is on trial; (2) the other crimes evidence must not be remote in time from the offense charged; and, (3) the prejudicial effect must not outweigh the probative value on the issue of the defendant's predisposition.
The defendant urges that the additional factors, as set forth in State v. Walker, 394 So.2d 1181 (La.1981), should also have been considered. In Walker, supra, the Supreme Court stated:
"This court has repeatedly held that before evidence of criminal conduct may be admitted it must be determined that: (1) there is clear and convincing evidence of the commission of the other crimes and the defendant's connection therewith, State v. Prieur, supra; (2) the other crimes evidence is substantially relevant for some other purpose than to show a probability that the defendant committed the crime on trial because he is a man of criminal character, State v. Frederick, 340 So.2d 1353 (La.1976); (3) the other crimes evidence does tend to prove a material fact genuinely at issue, State v. Ledet, 345 So.2d 474 (La.1977); and (4) the probative value of the extraneous *1362 crimes evidence outweighs its prejudicial effect, State v. Jackson, 352 So.2d 195 (La.1977); State v. Prieur, supra."

We need not determine today whether the three Batiste factors are sufficient in determining the admissibility of other crimes evidence in order to rebut a defense of entrapment. In the instant case, the record clearly shows that the additional requisites of Walker have been met by the State. We find that the evidence at trial clearly and convincingly showed that the 1977 and 1978 criminal activity had occurred and that the defendant was involved in it.
Tommy Longman testified that while he was working for the St. Mary Parish Sheriff's Office, he had twice participated in the arrest of defendant on drug related charges. The first arrest occurred in 1977 when defendant was arrested for the possession of two pounds of marijuana. Defendant told Longman at that time that he had previously dealt in 100 pound lots of marijuana. Matt LeBlanc, also with the St. Mary Sheriff's Office, similarly testified as to his involvement in the 1977 arrest of defendant for the possession of marijuana. The second arrest by Longman involved defendant's possession of cocaine. In a sworn statement following that arrest, defendant admitted that he had driven four friends to Houston in order to purchase cocaine. Following the purchase, they consumed a portion of the cocaine as they drove back to the Morgan City area.
In light of the above, we find that there was clear and convincing evidence of the defendant's commission of the 1977 and 1978 crimes. The evidence was pertinent to whether the sale in question was caused by the defendant's own predisposition towards drug dealings or by inducements from the confidential informant. For these reasons, the probative value of such evidence sufficiently outweighed its prejudicial effect.
Alternatively, defendant contends that if the Batiste standard was properly applied, the State failed to meet its burden under such standard, in that the evidence presented was too remote in time from the crime at issue.
The trial judge considered the remoteness of the 1977 and 1978 arrests and decided that the overall evidence showed a consistent pattern of drug related activity from 1977 up to the date of defendant's arrest. We agree. In view of the entirety of the evidence presented at trial and the fact that defendant's past dealings with drugs were not limited to the incidents in 1977 and 1978, we find that the remoteness requirement of Batiste was satisfied.
This assignment of error lacks merit.

ASSIGNMENT OF ERROR NO. 4
Defendant's fourth assignment of error is that the trial judge erred in admitting into evidence statements made by defendant after his detention in his mobile home but prior to being advised of his Miranda rights.
The record shows that defendant made certain inculpatory statements while being detained in his mobile home, prior to being advised of his rights. These statements were spontaneous and were not the result of any questions or interrogation by any officers.
The Supreme Court in State v. Kirkpatrick, 443 So.2d 546 (La.1983), writ denied, ___ U.S. ___, 104 S.Ct. 2374, 80 L.Ed.2d 847 (1984), considered whether Miranda warnings were required where a statement was made while a defendant was in custody but was not questioned. The court observed that:
"In Rhode Island v. Innis, 446 U.S. 291, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980), the United States Supreme Court examined their opinion in Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), and reiterated that "the special procedural safeguards outlined in Miranda are required not where a suspect is simply taken into custody, but rather where a suspect in custody is subjected to interrogation." 446 U.S. at 300, 100 S.Ct. at 1689. Thus, Miranda safeguards are triggered by custody plus interrogation. Where there is custody *1363 but no interrogation, Miranda is not triggered. In this case, we find that the inculpatory statements by the defendant were not made pursuant to any direct interrogation. Further, they were not the product of a conversation that was "reasonably likely to elicit an incriminating response" from the defendant. 446 U.S. at 301, 100 S.Ct. at 1689."
In light of the above, we find no error in the trial court's decision to admit the spontaneous statements of defendant into evidence.
This assignment of error is without merit.

ASSIGNMENT OF ERROR NO. 5
The final assignment of error to be considered on appeal is whether the trial court erred in allowing the introduction of a statement allegedly made by defendant which was not included in the La.C.Cr.P. Art. 768 Notice.
The statement in question occurred in a telephone conversation between defendant and State Trooper Patrick LaSalle a few days after defendant's arrest. Defendant telephoned the police station to talk to State Police Trooper Fred Roy to complain about a news story. Trooper Roy was not available at the time so defendant spoke to Trooper LaSalle. During this conversation, defendant stated that not all of the drugs found in his mobile home belonged to him. Trooper Roy later returned defendant's telephone call and defendant made a similar statement to him concerning the drugs.
Both the Article 768 Notice and the State's answer to the motion for discovery included notice of an oral inculpatory statement made to Trooper Roy over the telephone during the month of June in 1983. Defendant contends that since there was no notice of the statement made to Trooper LaSalle, a mistrial should have been granted. We disagree.
In State v. Bellows, 442 So.2d 889 (La. App. 3rd Cir.1983), writ denied, 446 So.2d 1222 (La.1984), this court held that:
"The purpose of the statutory scheme of LSA-C.Cr.P. art. 768 is to prevent surprise and to allow adequate time for the preparation of the defense. State v. Russell, 416 So.2d 1283 (La.1982), cert. denied, [459] U.S. [974], 103 S.Ct. 309, 74 L.Ed.2d 288 (1982). We note that in State v. Sneed, 316 So.2d 372 (La.1975), the court held that even in the absence of the written notice required by Article 768, a defendant is not prejudiced by the admission of statements if he had actual notice by other means. See, State v. Williams, 416 So.2d 914 (La.1982)."
Defendant knew of the existence of the statement made to Trooper Roy and of the State's intention to use it. Since this was, in essence, the exact statement made to Trooper LaSalle, of which defendant now complains, there existed no surprise that such statement would be brought out during trial. The only surprise which existed was the number of times that the statement was made. This in no way hindered defendant's ability to prepare a defense for the substance of the inculpatory statement. We therefore find no prejudicial error in the admission of the statement made to Trooper LaSalle.
This assignment of error lacks merit.

DECREE
For the above and foregoing reasons, defendant's conviction and sentence are affirmed.
AFFIRMED.
NOTES
[1] The informant had left the mobile home, therefore he was not in danger. There was no evidence that the officers feared imminent destruction of the contraband. The officers could likely have guarded the site without detection by the defendant or danger to themselves.