545 So.2d 560 (1989)
STATE of Louisiana.
v.
Darren JAMES and Chris Woods.
No. 88-KA-0031.
Court of Appeal of Louisiana, Fourth Circuit.
May 9, 1989.
*562 Dwight Doskey, Orleans Indigent Defender Program, New Orleans, for appellants.
Harry F. Connick, Dist. Atty. and Sandra Pettle, Asst. Dist. Atty., New Orleans, for appellee.
Before SCHOTT, C.J., and LOBRANO and ARMSTRONG, JJ.
LOBRANO, Judge.
Defendants, Darren James and Chris Woods were charged with the December 11, 1986 armed robbery of Lucedia Ledoux and the January 2, 1987 armed robbery of Mark Serpas. Both were convicted of the armed robbery of Ledoux, and were acquitted of the robbery of Mark Serpas. On September 8, 1987, James was sentenced to 99 years at hard labor to be served consecutively with a life sentence received in another matter. Woods was sentenced on September 16, 1987 to five (5) years at hard labor.
Both defendants perfect this appeal. However, Woods neither specifies nor briefs any assignments of error. His appeal, therefore, is limited to an errors patent review. This Court finds no errors patent and therefore his conviction and sentence are affirmed. All further discussions in the remainder of this opinion refer to defendant Darren James only.
FACTS:
On December 11, 1986, Lucedia Ledoux drove to Franklin Avenue to visit her friend, Keith Carlson. Before exiting her vehicle she observed two men standing in front of a building about a block away. No one else was in the area. As she exited her vehicle she heard the pounding of approaching footsteps and a voice shouted, "Stop! I have a gun! I want your money!" The taller of the two men held an automatic handgun pointed at Ledoux. She recognized the pair as the two men she observed standing in front of the building. She handed over her wallet containing fifty-one dollars ($51.00) in cash and several credit cards. The gunman then ordered her to turn around. She complied with her hands up. He then asked, "Do you have anything else? Neck chain? Watch? Rings? Any other jewelry?" He then reached down and patted her from the neck down to the waist. She was ordered to lay down on the sidewalk. The shorter of the two men pushed down on her shoulder ordering, "lay down, lay down!" It was at that moment that her friend, Keith Carlson, opened his front door and called her name. The two men turned and fled. The police were summoned and arrived within minutes. Ledoux told the officers that she could identify the robbers. They took her in the police car and drove around the neighborhood looking for the two men. The search was unsuccessful.
On February 17, 1987, Ledoux attended a physical line-up at police headquarters. She identified defendant as the taller of the two men who carried the gun and demanded her money. On February 23, 1987, she identified co-defendant, Chris Woods from a photo line-up as the shorter of the two men who robbed her.
Defendant appeals his conviction and sentence asserting the first two assignments through his appellate counsel and the last four, pro se.
1) This Court erred in reversing the trial court's granting of defendant's motion to suppress the identification for failure to provide counsel;
2) The trial court erred in imposing an excessive sentence;
3) The state failed to establish jurisdiction and venue;
4) The state violated defendant's constitutional right to compulsory process resulting in defendant's inability to present favorable evidence;
5) The prosecutor made improper statements during closing argument and rebuttal which prejudiced the jury;
6) There was not sufficient evidence to support defendant's conviction.
*563 ASSIGNMENT OF ERROR 1:
Defendant asserts this Court erred in reversing the trial court's granting of his motion to suppress identification. This issue has already been decided via supervisory writs by this court and as such will not be considered again.[1]
This assignment of error is without merit.
ASSIGNMENT OF ERROR 2:
The Louisiana Constitution prohibits the imposition of excessive punishment. Art. I, Sec. 20. The imposition of a sentence, although within the statutory limit, may violate a defendant's constitutional right against excessive punishment that is enforceable by this Court on appellate review. State v. Cann, 471 So.2d 701 (La. 1985); State v. Thomas, 447 So.2d 1053 (La.1984); State v. Francosi, 511 So.2d 1181 (La.App. 4th Cir.1987); State v. Brumfield, 496 So.2d 425 (La.App. 4th Cir. 1986), writ den. 503 So.2d 13.
A sentence which appears to be severe is considered excessive and unconstitutional if it is "grossly out of proportion to the severity of the crime" or "is nothing more than the purposeless and needless imposition of pain and suffering." State v. Brogdon, 457 So.2d 616 (La.1984), cert. den. Brogdon v. Louisiana, 471 U.S. 1111, 105 S.Ct. 2345, 85 L.Ed.2d 862 (1985); State v. Telsee, 425 So.2d 1251 (La.1983).
The trial judge must articulate reasons for an apparently severe sentence tailoring it to the individual offender and the particular offense. State v. Tilley, 400 So.2d 1363 (La.1981); State v. Francosi, supra. Code of Criminal Procedure Art. 894.1 sets forth the criteria to be used by the trial court in its determination. The trial court need not articulate every circumstance cited, but it must indicate that it considered the 894.1 guidelines in tailoring a particular sentence to a particular defendant convicted of a particular crime. State v. Guiden, 399 So.2d 194 (La.1981). Not only the aggravating circumstances, but the mitigating circumstances as well must be considered, State v. Franks, 373 So.2d 1307 (La.1979) and the court must state the factual basis underlying its conclusion. State v. Saunders, 393 So.2d 1278 (La. 1981). Accordingly, the sentencing record must reflect that the trial judge considered the personal history of the defendant in addition to the seriousness of the crime and the post criminal history of the defendant. State v. Quebedeaux, 424 So.2d 1009 (La. 1982), affirmed on remand, 446 So.2d 1210 (La.1984); State v. Jones, 398 So.2d 1049 (La.1981); State v. Molinet, 393 So.2d 721 (La.1981).
Although not unbridled, the trial court is given great discretion in sentencing within statutory limits. State v. Trahan, 425 So.2d 1222 (La.1983); State v. Bradley, 414 So.2d 724 (La.1982); State v. Washington, 414 So.2d 313 (La.1982).
Once adequate compliance with Art. 894.1 is found, the reviewing court must look to the facts and sentences of other cases to determine whether the sentence imposed is too severe in light of the particular circumstances of defendant's case, *564 keeping in mind that the maximum sentences should be reserved for the most egregious of offenders. State v. Cann, supra; State v. Brogdon, supra; State v. Francosi, supra; State v. Davis, 485 So.2d 981 (La.App. 4th Cir.1986), writ den. 488 So.2d 1019.
Insofar as the length of the sentence, claims of excessive sentences by defendants who were sentenced to ninety-nine years for armed robbery have been evaluated and affirmed by this court and our Supreme Court.
In State v. Douglas, 389 So.2d 1263 (La. 1980), our Supreme Court upheld a ninety-nine year sentence for armed robbery. The victim was not injured. The defendant's criminal history consisted of three felony convictions; two for simple burglary and one for possession of heroin. The high court found defendant's record manifested a propensity for felonious behavior.
In State v. Proctor, 354 So.2d 488 (La. 1977), the high court upheld the ninety-nine year sentence given a defendant who entered a supermarket and robbed two employees at gunpoint. No one was injured.
In State v. Johnson, 466 So.2d 741 (La. App. 4th Cir.1985), writ den. 469 So.2d 979, this Court affirmed the ninety-nine year sentence of a defendant who placed a gun to his victim's head and demanded the victims possessions. The victim was not harmed. Defendant's prior felony convictions were for attempted simple robbery and aggravated assault.
In State v. Wilson, 452 So.2d 773 (La. App. 4th Cir.1984), this court upheld the ninety-nine year sentence of a defendant who robbed his victim at gunpoint of his money and jewelry. The victim was not injured. Defendant's criminal record consisted of convictions for criminal trespass, possession of state property, soliciting for prostitution and theft.
In State v. Nelson, 449 So.2d 161 (La. App. 4th Cir.1984), this court upheld the ninety-nine year sentence of a defendant who robbed an auto parts store at gunpoint. The defendant held a gun to the head of one of the victims and threatened to shoot both of them if they followed him. When the victims gave chase, defendant fired at them. Defendant was on probation from a Florida conviction at the time of the robbery.
Accordingly, we hold that defendant's assertion that his sentence is excessive is without merit. Armed robbery creates an atmosphere fraught with danger to the victim and others who may be present, as well as to the accused himself. State v. Levi, 259 La. 591, 250 So.2d 751 (1971).
In sentencing defendant, the trial court stated:[2]
"Sir, the legislature has imposed certain restrictions and limitations upon the Court in regard to sentencing in armed robbery cases. In regard to the murder that you were convicted of, the jury, 12 peers, 12 people in your community, that live in this community have decided your penalty. And, this is the only time that the Louisiana law that the jury makes the decision in the penalty, and not the Court. You were placed in a situation where your jeopardy was life or death. The jury chose life. So, I have no other discretion other than sentence you in that fashion. In regard to the other felony involved, particular one felony, he was found not guilty on the other felony."

* * * * * *
"Of armed robbery. It shows a pattern in the systematic type of activity between these related crimes that you were found guilty of. It shows a pattern of the type of people that you assault, and the type of people that you place in jeopary [sic] with a pistol. And, in the occasion in Armstrong Park, there's not only an assault against just that person, it caused someone not to live out their life, but it's also an assault upon our entire community. The community of people we live with. You've got to live *565 within certain perimeters, and for that reason you have lost your right to live amongst those people who are free. This Constitution that we live under gives everybody certain right. And, you have been afforded some rights that other have not had the opportunity yet to be affoarded. [sic] The Sixth Ammendment [sic] of the United States Constitution. The Fifth Ammendment [sic] of the United States Constitution. You were given a fair trial. Now, it's my obligation as an agent of the society for which we live in to sentence you. And, I will sentence you on the felony murder case first, which I have no discretion. The sentence of this Court is to sentence the defendant to life imprisonment, without benefit of probation, parole or suspension of sentence. And, that life is my understanding, under the current intent of our Legislature and the laws of this country as they apply to this case, means that you have life imprisonment.
The other crime is one of less magnitude because noone [sic] was killed, but the events surrounding that particular event, that that person was only millimeters of a second away from the possibilities, with a gun banished against her. And, it seems to me that in both of these cases, its females, weaker people, that you have taken advantage of. In this case, the only appropriate sentence I can impose, taking into consideration your entire criminality, is 99 years Department of Corrections, to run concurrentconsecutive to the other case." (emphasis added)
Although the trial court did not specifically mention the Art. 894.1 guidelines, we find the record clearly supports the sentencing choice and reflects the sentence is not excessive. See: State v. Smith, 430 So.2d 31 (La.1983).
This assignment of error is without merit.
ASSIGNMENT OF ERROR 3: (PRO SE)
Defendant asserts the state failed to establish that the crime occurred in Orleans Parish. C.Cr.P. Art. 611; La. Const. Art. I, Sec. 16.
C.Cr.P. Art. 615 provides:
"Improper venue shall be raised in advance of trial by motion to quash, and shall be tried by the judge alone. Venue shall not be considered an essential element to be proven by the state at trial, rather it shall be a jurisdictional matter to be proven by the state by a preponderance of the evidence and decided by the court in advance of trial."
Defendant's complaint is untimely as he failed to file a motion to quash, pursuant to C.Cr.P. Art. 615. See, State v. McDermitt, 406 So.2d 195 (La.1981).
Even assuming arguendo that defendant's complaint is timely, we find the state did prove venue in Orleans Parish even though Orleans Parish was never specifically mentioned. See, State v. Adams, 394 So.2d 1204 (La.1981). The street locations mentioned by the victim are clearly within the boundaries of Orleans Parish and the robbery was investigated by the New Orleans Police Department.
This assignment of error is without merit.
ASSIGNMENT OF ERROR 4: (PRO SE)
The facts relevant to this assignment of error are as follows:
At trial, Ledoux stated that her D.H. Holmes credit card was mailed to her with a postcard stating, "On your recent shopping trip, you forgot your credit card in the store. Here it is courtesy of Holmes." The defense vehemently objected to not being informed of this information which might show that someone other than defendant had possession of the card. The defense moved for a mistrial.
The state argued that it was not under any obligation to inform the defense of the return of the card because the card was not returned through any state action.
The trial judge ruled that the state was under a continuing obligation to turn over requested discovery. The trial court, however, refused to grant a mistrial. The trial judge stated that if the defense obtained additional information about the use of the *566 card that would serve to exculpate defendant that a motion for a new trial could be granted. The trial judge then questioned Ledoux in chambers regarding the use of the card. Ledoux stated that no purchases were made after the date of the robbery. Trial then resumed.
Prior to the state resting its case, the defense complained that the custodian of records for D.H. Holmes had not answered the subpoena duces tecum that had been issued some two and one-half hours before. The trial court stated that the lady from D.H. Holmes was very cooperative and stated that the records would be brought to court no later than the following morning. Again, the trial court stated that if the records from Holmes indicated the possibility of exculpatory evidence, a new trial would be granted.
Defendant argues that the trial court should have issued an arrest warrant for the custodian of records from D.H. Holmes just as it did for another witness, David Beverage.
C.Cr.P. Art. 737 gives the trial court discretion to issue an attachment for any witness who fails to appear. The right of an accused to have attachments issued to compel the attendance of witnesses exists only when the circumstances and conditions are such as to call legally for that writ. State v. Stewart, 117 La. 476, 41 So. 798 (1906). The trial judge stated that David Beverage was not cooperative in receiving or responding to the subpoena but the lady at D.H. Holmes was very cooperative in attempting to respond to the subpoena. He refused to issue the attachment for the Holmes' custodian of records. In light of the fact that Ledoux testified that no purchases were made after the date of the robbery and defendant never filed a motion for a new trial, we find no abuse in the trial court's decision not to issue the writ of attachment for the Holmes' custodian of records.
This assignment of error is without merit.
ASSIGNMENT OF ERROR 5: (PRO SE)
Defendant complains of the following alleged prejudicial remarks by the prosecutor during closing argument:
"BY MR. McMAHON:
... You have somebody taller and somebody shorter. You have two black males, youngnot young and middle aged. We have short hair. And, we have got those two people. This is all This is sadly typicala typical New Orleans Armed Robbery, both counts.
BY MR. MASINTER:
Your honor, I object.
BY MR. DOSKEY:
Objection, there has been no testimony that
BY THE COURT:
Objection sustained.
BY MR. MASINTER:
That's improper argument.
BY MR. McMAHON:
You are not going to get an armed robbery on Carnival Day.
BY MR. MASINTER:
Objection, Your Honor. He doesn't knowCarnival is not involved in this case here, Your Honor.
BY THE COURT:
All right, sir. Confine yourself to the evidence in the case. Argue on the evidence in this case.
BY MR. McMAHON:
Armed robbers don't hit people in front of a big crowd.
BY MR. MASINTER:
Objection, Your Honor. There is no proof of that. No one has done a
BY THE COURT:
Objection overruled. Proceed. Move on."
Although the prosecutor's remarks were out of the scope of closing argument, in light of the overwhelming evidence of defendant's guilt, those remarks were harmless error. C.Cr.P. Art. 774; C.Cr.P. Art. 921.
Defendant further complains of the following remarks during the state's rebuttal:

*567 "BY MR. PARKER:
... You talk about the fact that the police don't choose the victims. Well, he is right. The police do not choose the victim. These people did. These two defendants chose the victims. They chose the place it would happen and that area that it would happen in. And, you know, I never thought I'd see the day when Milton Masinter would get up here and say, I think we have good honest policemen.' I never thought I'd see that, but I heard it today. I wonder if in his heart he really believes thatif he really believes
BY MR. MASINTER:
Your Honor, I'm going to object to those kinds of remarks. He is attacking me personally.
BY THE COURT:
Objection overruled. Continue on with your argument.
BY MR. MASINTER:
Judge, I
BY THE COURT:
All right. Move on, Mr. Julian.
BY MR. MASINTER:
He doesn't have to go on like that, Judge, and he knows that is not proper.
BY THE COURT:
Move on.
BY MR. PARKER:
Yes, sir, I'll go on."
The state was clearly responding to defense counsel's argument attacking the credibility of the police officers. Thus, these remarks were within the scope of rebuttal. C.Cr.P. Art. 774. When the prosecutor's remarks rose to the level of a personal attack on defense counsel, the court ordered the prosecutor to "move on". Again, considering the overwhelming evidence of defendant's guilt, we find these remarks to be harmless error. C.Cr.P. Art. 921.
ASSIGNMENT OF ERROR 6:
Defendant asserts there was insufficient evidence to support his conviction.
When reviewing a conviction for sufficiency of evidence, an appellate court must determine whether the evidence presented, when seen in the light most favorable to the prosecution, is sufficient to convince a rational trier of fact that all of the elements of the crime were proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).
To support a conviction for armed robbery, the State must prove that there was (1) a taking (2) of anything of value (3) from the person of or in the immediate control of another, (4) by use of force or intimidation, (5) while armed with a dangerous weapon. La.R.S. 14:64.
In this case, Ledoux positively identified James at a physical line-up, Woods in a photographic line-up, and both defendants at trial as the two men who robbed her at gunpoint and took fifty-one dollars and other possessions. These facts are sufficient to support a conviction of armed robbery. State v. Oliver, 526 So.2d 395 (La.App. 4th Cir.1988), writ den. 532 So.2d 129 (La.1988).
This assignment of error is without merit.
For the foregoing reasons, the conviction and sentence of Darren James, and Charles Woods are affirmed.
AFFIRMED.
NOTES
[1] In State v. James, et al (unpub. K-7756, La. App. 4th Cir. May 5, 1987), this Court found "There is no right to have counsel present at a line-up which is conducted before the initiation of adversary judicial criminal proceedings." Citing State v. Friddle, 396 So.2d 1242 (La.1981), this Court stated:

"The line-up in the instant case was conducted during the investigation of the crime, before the bill of information was filed and before the preliminary hearing was held. Although the record reflects some miscommunication between the State and defense counsel, we cannot say that the State was in bad faith or was attempting to circumvent the defendant's statutory right to counsel. In such a case, not involving a violation of the defendant's constitutional right to counsel, the suppression of reliable evidence is not the appropriate remedy. State v. Thomas, 406 So.2d 1325 (La. 1981).
The trial court apparently relied upon an analogy to Miranda warnings, but we believe this inappropriate. While a suspect has a right to counsel before he makes any statement, he may refuse to make a statement. We know of no law, however, which would give a suspect a right to refuse to participate in a line-up. Consequently, we reject any analogy to Miranda which would hold that a suspect has a right to have an attorney present at a line-up before an indictment or bill of information has been filed."
[2] Defendant was sentenced at the same time on both his convictions for the murder of the tourist in Armstrong Park and on the armed robbery conviction which is the subject of the instant case.