392 So.2d 454 (1980)
STATE of Louisiana
v.
Gregory SMITH.
No. 67511.
Supreme Court of Louisiana.
December 15, 1980.
Rehearing Denied January 26, 1981.
*455 Dwight Doskey, Orleans Indigent Defender Program, New Orleans, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Harry F. Connick, Dist. Atty., Fred P. Harper, Jr., Louise Korns, Lance Africk, Asst. Dist. Attys., for plaintiff-appellee.
LEMMON, Justice.
In this appeal from a conviction of second degree murder the principal issue involves defendant's attempt to suppress the murder weapon seized incident to the allegedly unlawful arrest of Wilbert Kelly.

I.
On June 20, 1978 the body of an unidentified female was discovered in an isolated wooded area of Orleans Parish. The victim apparently had been shot repeatedly with a .45 caliber pistol and a .38 caliber pistol. A slug recovered from her body was submitted to the crime laboratory for analysis. *456 Medical opinion fixed the time of death as the nighttime hours of the evening prior to the discovery of the body.
The victim was eventually identified as Veronica Dubuchet, but apparently little other information was uncovered until an unexpected, critical clue was provided by the crime laboratory.
On July 17 the crime laboratory, in examining a .45 caliber automatic which had been recently submitted for testing, identified the pistol as the weapon which fired the slug found in Miss Dubuchet's body. The pistol had been seized by the police during the arrest of a wanted fugitive named Wilbert Kelly at the home of Bernard McGee.
This information led police to a series of interviews with several individuals who were with Miss Dubuchet on the evening of her death. Police eventually learned that defendant, in the company of several other men, took Miss Dubuchet to the lonely spot where her body was found and, as she begged for her life, shot her mercilessly with the .45 caliber automatic and then with a .38 caliber derringer until she died.
Defendant was ultimately convicted of second degree murder. After being adjudicated a habitual offender, he was sentenced to life imprisonment at hard labor.

II.
Prior to trial defendant moved to suppress the .45 caliber pistol seized from McGee's home incident to Kelly's arrest, contending that the warrantless arrest was illegal under Payton v. New York, 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980) and State v. Brown, 387 So.2d 567 (La. 1980). Although none of defendant's reasonable expectations of privacy were implicated by the police entry into McGee's home or their seizure of a pistol in Kelly's possession, La.Const. art. 1, § 5 (1974), as construed by this court in State v. Hebert, 351 So.2d 434 (La.1977) and State v. Culotta, 343 So.2d 977 (La.1977), permits defendant to question the legality of the police conduct leading to the seizure. Compare Rakas v. Illinois, 435 U.S. 922, 98 S.Ct. 1438, 55 L.Ed.2d 515 (1978); Rawlings v. Kentucky, ___ U.S. ___, 100 S.Ct. 2556, 65 L.Ed.2d 633 (1980); United States v. Salvucci, ___ U.S. ___, 100 S.Ct. 2547, 65 L.Ed.2d 619 (1980).
The evidence presented at the motion to suppress established that Officer Dewey Varnado on July 11, 1978 was requested to assist in the apprehension of a female probationer in connection with a probation violation. When the woman was brought to police headquarters, she offered to provide information about a wanted subject, Wilbert Kelly, in exchange for leniency. A check of the records of "wanted" subjects revealed that Kelly was being sought on charges of armed robbery and attempted murder of police officers.
When Varnado accepted the woman's offer to help locate Kelly, she dialed a telephone number and engaged in a conversation with Bernard McGee, telling McGee that she knew Kelly was at his house and that she was afraid he would get into trouble if Kelly was permitted to remain there. McGee apparently revealed that Kelly was still at his residence, and the woman covered the receiver with her hand and relayed the information to Varnado.
Varnado immediately summoned assistance and went directly to McGee's residence, arriving within a half hour. In fact, McGee was still on the phone with the woman when the officers arrived.
Three armed officers surrounded the house, while Varnado and a fifth officer approached the front door with shotguns in their hands. When McGee answered Varnado's knock at the door, Varnado told McGee they were there to apprehend Wilbert Kelly. The officers entered the house, and when McGee indicated someone was in the back room, the officers proceeded into that room and found Kelly asleep on a sofa bed, with a .45 caliber automatic on the bed. The officers ordered Kelly out of the bed and arrested him, seizing the pistol in the course of a protective search.
*457 On appeal defendant argues that the warrantless arrest of Kelly after the nonconsensual entry in McGee's house violated the dictates of the Payton decision and that suppression of the pistol seized in that arrest is required.
We observe initially that the Payton decision does not control this case. In Payton the defendant's own reasonable expectations of privacy were breached by the warrantless, nonconsensual entry into Payton's own home. In the present case the defendant had no Fourth Amendment interest violated which gave rise to a right on his part to question the validity of the seizure. His right to litigate the validity of this seizure arises only under the Louisiana Constitution.
In State v. Brown, above, this court, recognizing the parallel between the United States Supreme Court's approach to the Fourth Amendment and the proper result under the state constitution, held that a warrantless, non-consensual entry into a defendant's home for the purpose of an arrest was constitutionally invalid, unless such entry was necessitated by exigent circumstances. The court also found that the photographic lineup was a product of that illegal arrest, but nevertheless affirmed the conviction because the in-court identification was clearly free from taint of arrest.
The Brown decision clearly applied the principles of Payton to suppress evidence obtained as a result of a warrantless arrest in a defendant's home in the absence of exigent circumstances. Nevertheless, we conclude that suppression of the evidence is not required in the present case.
First, the facts of the present case presented the officers with exigent circumstances necessitating a prompt entry to secure the arrest of a dangerous felon. The officers were seeking an individual wanted for violent felonies involving danger to human life. His benefactor, McGee, had effectively been warned that he (McGee) would get into trouble if he allowed Kelly to remain hidden on his premises, and the officers wasted no time in going immediately to McGee's home. Hindsight may have revealed that their haste was unnecessary, but the officers' concern that Kelly might flee was reasonable, particularly in light of the fact that he was located on the premises of a third person.
Second, we hold that State v. Brown, above, is not to be given retroactive effect.[1]
As the United States Supreme Court noted in United States v. Peltier, 422 U.S. 531, 95 S.Ct. 2313, 45 L.Ed.2d 374 (1975), the deterrent function of the exclusionary rule is not served by retroactive application to situations in which officers acted in good faith reliance on previously announced standards. The court in Peltier accordingly refused to accord retroactive application to its decisions limiting border patrol search authority and upheld searches which were conducted pursuant to previously announced regulations that, although not declared invalid at the time of the questioned search, were later declared to be unconstitutional infringements of the Fourth Amendment. The same result should obtain here under the Louisiana Constitution, especially since the question involved is not *458 one of the fairness of the trial or the determination of guilt or innocence.[2]

III.
Our conclusion that the Payton and Brown decisions do not require suppression of the pistol does not completely dispose of the issue of the legality of Kelly's arrest. There remains the question of the reasonableness of the officers' belief that Kelly was in McGee's home and that probable cause existed for Kelly's arrest.
There is little question here that the officers had a substantial basis for believing that Kelly was in McGee's home. The female probationer freely offered her assistance to the police and fully explained the basis on which she based her information. She revealed her acquaintance with McGee and telephoned him in the officer's presence to confirm Kelly's presence. When McGee reported that Kelly was still there, she gave officers the signal to proceed and held McGee in conversation until the police arrived. Her credibility and the reliability of her information were apparent from the circumstances. See State v. Abadie, 390 So.2d 517 (La.1980). Furthermore, the officers entered only the living room portion of the house for safety reasons and did not go into the rear portion of the residence until McGee confirmed the presence of "a friend" who was staying with him.[3]
The issue of probable cause presents a more difficult problem. Although the officers acted in good faith reliance on the "wanted" report issued by other New Orleans police officers as a justification for Kelly's arrest, the mere fact that Kelly was "wanted" does not establish that there was in fact probable cause for his arrest. Perhaps that fact was a sufficient basis for Varnado's reasonable belief that the officers had probable cause to believe that Kelly committed the crimes, but such boot strapping cannot substitute for probable cause in order to satisfy the Fourth Amendment's restrictions on police seizures of persons or the parallel restrictions found in the Louisiana Constitution.[4]
Neither party introduced evidence on the issue of probable cause for Kelly's arrest at the hearing on the motion to suppress.[5] We accordingly base our determination of that issue on allocation of the burden of proof.[6] We hold that when a defendant *459 seeks to exclude physical evidence seized pursuant to the arrest of a third person, the burden falls upon the defendant to demonstrate that the arrest was not supported by probable cause.[7]
Normally, the burden is on the prosecution to justify a warrantless arrest or search of a defendant in order to use the evidence which is a product of the arrest or search. See State v. Franklin, 353 So.2d 1315 (La.1978). However, in cases involving the arrest of third persons, we analogize the burden of proof issue to those decisions of this court which hold that a defendant challenging the voluntariness of the confession of a third person must carry the burden of proving by a preponderance of the evidence that the person did not give the confession voluntarily. See State v. Bouffanie, 364 So.2d 971 (La.1978); State v. Williams, 385 So.2d 214 (La.1980).
This approach accommodates the competing societal interests, on the one hand, of admitting highly reliable and probative physical evidence and, on the other hand, of deterring unreasonable police conduct. The approach is particularly appropriate to the situation in which the complaint does not concern the defendant's federally protected constitutional right to his own privacy. If the defendant wishes to utilize the expanded exclusionary rule of the Louisiana Constitution when he is adversely affected by a seizure which violates another person's reasonable expectation of privacy, it is appropriate to require that the defendant establish the police conduct was unreasonable.
In this case defendant has not carried his burden of establishing that the police arrested Kelly without probable cause. Accordingly, the trial court did not err in denying the motion to suppress.
Defendant's other assignments are controlled by the application of well established principles and are treated in an unpublished appendix.
The conviction and sentence are affirmed.
DIXON, C. J., and DENNIS, J., dissent with reasons.
DIXON, Chief Justice (dissenting).
I respectfully dissent.
If there was no probable cause to arrest Kelly, defendant has the right under the Louisiana Constitution (Art. 1, § 5) to suppress what was illegally seized at Kelly's arrest.
NOTES
[1] Because defendant lacks standing under the Fourth Amendment, we need not decide whether Payton is to be given retroactive effect. The United States Supreme Court has not decided this issue, and we are not persuaded that general principles of retroactive application require such a result. In United States v. Peltier, 422 U.S. 531, 95 S.Ct. 2313, 45 L.Ed.2d 374 (1975), the court said "[i]t is indisputable ... that in every case in which the court has addressed the retroactivity problem in the context of the exclusionary rule, whereby concededly relevant evidence is excluded in order to enforce a constitutional guarantee that does not relate to the integrity of the fact finding process, the court has concluded that any such new constitutional principle would be accorded only prospective application." See also Linkletter v. Walker, 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1965), holding that Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961), was not to be given retroactive effect, and State v. Bible, 389 So.2d 42 (La.1980), holding that Arkansas v. Sanders, 442 U.S. 753, 99 S.Ct. 2586, 61 L.Ed.2d 235 (1979) was not to be given retroactive effect.
[2] In State v. Ranker, 343 So.2d 189 (La.1977), this court expressed concern about the constitutionality of C.Cr.P. art. 224's authorization of forcible entry into a place where the person to be arrested "is reasonably believed to be". That expression in dicta, however, is not a sufficient reason to exclude probative physical evidence seized in this case by police who were acting in conformity with existing legislative standards. Compare United States v. Blake, 632 F.2d 731 (9th Cir.1980).

The implication in the Brown decision that Payton is to be given retroactive effect is dicta and does not govern here at any rate, because the warrantless entry was into Brown's own home.
[3] Although we do not predicate our holding on consent, we note the prosecution's contention that McGee did not voice objection to the entry and did not attempt to refuse entry to the police. It is also noteworthy that the police approached McGee's home in the mid-afternoon hours.
[4] As stated earlier, the Fourth Amendment is not the basis of our analysis because Smith has no privacy interest involved in Kelly's seizure at McGee's home. Rather, Smith had the right to raise the validity of Kelly's arrest only under La.Const. art. 1, § 5 (1974).
[5] The defendant's contentions regarding the illegality of the arrest and subsequent seizure focused on the manner in which the entry was effected and not upon the lack of probable cause for Kelly's arrest.
[6] In fact, when the prosecutor during the hearing on the motion to suppress attempted to elicit from one officer the information that had been obtained from other sources, defendant objected that the response would call for "hearsay". The trial court erroneously sustained the objection.

The hearsay rule is not required to be applied at suppression hearings. See United States v. Matlock, 415 U.S. 164, 94 S.Ct. 988, 39 L.Ed.2d 242 (1974); State v. Devenow, 220 So.2d 78 (La.1969). Information relayed to a policeman from other sources can be treated at a suppression hearing as "non-hearsay" and may be considered insofar as it tends to prove that such information was in fact given to the officer. Whether he was reasonable in acting on the report is tested by other factors, such as the reliability of the manner in which the information was obtained and the credibility of the person reporting. See State v. Paciera, 290 So.2d 681 (La.1974).
[7] In a case, such as presented here, in which police officers are working in a large urban police department, a request (or "wanted") by one police officer alerting others that he has probable cause to arrest a suspect can be acted upon by other police officers. The test of the validity of the arrest, for purposes of the exclusionary rule, ultimately rests upon whether the investigating officers had sufficient facts to support probable cause. See United States v. Ragsdale, 470 F.2d 24 (5th Cir.1972).