987 So.2d 250 (2008)
STATE of Louisiana
v.
Brad HONEYCUTT.
No. 08-KA-126.
Court of Appeal of Louisiana, Fifth Circuit.
May 27, 2008.
*251 Paul D. Connick, Jr., District Attorney, Twenty-Fourth Judicial District, Parish of Jefferson, Terry M. Boudreaux, Andrea F. Long, Assistant District Attorneys, Gretna, LA, for Plaintiff/Appellee.
Bruce G. Whittaker, Attorney at Law, Louisiana Appellate Project, New Orleans, LA, for Defendant/Appellant.
Panel composed of Judges SUSAN M. CHEHARDY, FREDERICKA HOMBERG WICKER, and GREG G. GUIDRY.
*252 GREG G. GUIDRY, Judge.
The Defendant, Brad Honeycutt, appeals his conviction of possession with intent to distribute cocaine in violation of La.R.S. 40:967(A). We affirm the conviction and sentence, and remand for correction of the commitment.
In February of 2007, the Defendant was charged by bill of information. He was subsequently arraigned, pled not guilty, and filed a Motion to Suppress the Evidence. The motion was denied in May of 2007. Trial was held on June 11, 2007, after which a jury of 12 convicted him of the crime charged. On June 21, 2007, he was sentenced to 15 years imprisonment in the Department of Corrections, with the first two years to be served without benefit of parole, probation, or suspension of sentence.
The State filed a habitual offender bill of information on June 21, 2007, alleging that the Defendant was a second felony offender. The Defendant stipulated to the allegation in the bill of information. The trial judge vacated the Defendant's original sentence, and sentenced him to 15 years imprisonment in the Department of Corrections, to be served without the benefit of probation or suspension of sentence.
During the daylight hours on February 13, 2007, Deputies Erick Blandford and Todd Giacona of the Jefferson Parish Sheriffs Office were in an unmarked car patrolling a high crime area in the Tallowtree area in Harvey. As they entered the neighborhood, Deputy Blandford observed a man, later identified as the Defendant, crouched between two apartment complexes behind a brick wall four and one-half feet high. The courtyard was shared by the complexes. When the Defendant saw Deputy Blandford watching him, the Defendant ducked down. Because of numerous drug deals that had occurred in front of the building, the officers stopped, exited their unit, and approached the Defendant to find out what he was doing crouched behind the wall.
Deputy Blandford, who was in uniform, began a "voluntary conversation" with the Defendant. He noticed that the Defendant appeared nervous, was shaking and stuttering. For officer safety, he conducted an outer-clothing patdown to check for weapons. Deputy Blandford felt a bulge in the back of the Defendant's pants. A simultaneous search of the NCIC computer disclosed that the Defendant had an outstanding warrant for his arrest. The Defendant was arrested on the outstanding warrant, and the officers conducted a search incident to arrest. When the Deputy pulled the waistband of the Defendant's pants away from his body to check on the bulge, he and Officer Giacona observed the end of one clear plastic bag protruding from, and pinched between, the Defendant's buttocks. That bag contained a number of other clear plastic bags. All contained a white rock substance that a field test confirmed as crack cocaine. Deputy Blandford noted that this manner of storing illegal drugs is common. The Defendant also had $658 in his possession. He told the deputies that he was a street rapper.
Daniel Waguespack, an expert in the field of analysis and identification of controlled dangerous substances, testified that the contents of the clear plastic bag contained 17 off-white rocks individually wrapped in clear plastic bags. He further stated that the rocks tested positive for cocaine.
Lieutenant Daniel Jewell, Jr. of the Jefferson Parish Sheriffs Office was recognized as an expert in the field of use, packaging, value and distribution of controlled dangerous substances. He reviewed the evidence and testified that the *253 cocaine was packaged in a manner consistent with distribution of the drug.
On appeal, the Defendant asserts that the trial judge erred in denying his motion to suppress the evidence.
The Defendant asserts that the officers lacked specific reasonable belief of criminal wrongdoing by the Defendant, and failed to articulate a belief that the Defendant was armed and dangerous warranting the detention and frisk for weapons. He argues that the officer's belief that the neighborhood was a high crime area was not sufficient to justify the search of the Defendant as a "mere adjunct to the `voluntary conversation.'" He further argues that he reasonably believed he was not free to go, and was in fact detained, from the time that the officers stepped outside their vehicle. He further argues that even in a high crime area a person is free to avoid the policeeven as they approach to engage in a voluntary conversation. The Defendant argues that the field interview was simply a fishing expedition without legal justification that happened to bear fruit. As such, he concludes the search was illegal and the evidence should have been suppressed.
The officers' testimony at the suppression hearing was the same as at trial. The area in which the Defendant was arrested is a high crime area, the officers had received several calls in the past regarding narcotics and weapons there, and multiple arrests had occurred in that location. The Defendant's odd behavior was suspicious, and the officers approached the Defendant to discover why he was hiding. The Defendant was nervous, his hands were shaking, and he stuttered when he spoke. A patdown search for weapons disclosed a bulge, and the computer check disclosed an outstanding warrant for the Defendant's arrest. After his arrest, the search incidental to the arrest revealed 17 bags of cocaine hidden between the Defendant's buttocks.
The Defendant testified at the suppression hearing that he was at a relative's residence on this date and although he admitted he went outside, he denied crouching down by a brick wall. He admitted that he was frisked for officer safety, that the officer checked his name in the computer, that there was an attachment for him, and that he was arrested and searched incident to that arrest. The Defendant testified that he had $2,000 that morning from rapping at a club. He denied that the officer discovered crack cocaine on him.
At the hearing, the Defendant argued that La.C.Cr.P. art. 215.1 prohibits officers from conducting body searches without a warrant and, therefore, any evidence found should be suppressed as fruit of the poisonous tree. The State responded that the officers did not conduct a body or cavity search. The trial judge denied the Defendant's motion, stating:
Alright (sic). It's my understanding the testimony was that the officer was doing a search incidental to arrest because the defendant had a warrant out on him. He did a patdown, actually felt something protruding from histhe middle of his butt cheeks, for lack of a better word, and at that point, knew that whatever it was doesn't belong there and took a look, and that's when he found the crack. So, I don't find that there's any constitutional violations in any of that. The motion to suppress is denied.
(R., p. 58). Defendant objected.
In a hearing on a motion to suppress, the State bears the burden of proof in establishing the admissibility of evidence that is seized without a warrant. La.C.Cr.P. art. 703 D. The trial judge's *254 decision to deny a motion to suppress is afforded great weight and will not be set aside unless the preponderance of the evidence clearly favors suppression. State v. Burns, 04-175, p. 5 (La.App. 5 Cir. 6/29/04), 877 So.2d 1073, 1075. To determine whether the trial court's denial of the motion to suppress is correct, the appellate court may consider evidence adduced at the suppression hearing as well as evidence presented at trial. State v. Young, 05-702, p. 8 (La.App. 5 Cir. 2/14/06), 938 So.2d 90, 96-97. See also State v. Leger, 05-0011, p. 10 (La.7/10/06), 936 So.2d 108, 122, cert, denied, ___ U.S. ___, 127 S.Ct. 1279, 167 L.Ed.2d 100 (2007).
The Fourth Amendment to the United States Constitution and Article I, § 5 of the Louisiana Constitution prohibit unreasonable searches and seizures. If evidence is derived from an unreasonable search or seizure, the proper remedy is exclusion of the evidence from the defendant's trial. Burns, 04-175 at 4, 877 So.2d at 1075. A search conducted without a warrant issued upon probable cause is per se unreasonable, unless justified by a specific exception to the warrant requirement. State v. Triche, 03-149, p. 8 (La.App. 5 Cir. 5/28/03), 848 So.2d 80, 86, writ denied, 03-1979 (La.1/16/04), 864 So.2d 625.
Law enforcement officers are authorized by La.C.Cr.P. art. 215.1, as well as state and federal jurisprudence, to perform investigatory stops which permit officers to interrogate a person who is reasonably suspected of criminal activity. State v. Becnel, 04-1266, pp. 17-18 (La.App. 5 Cir. 5/31/05), 904 So.2d 838, 852. The Terry[1] standard, as codified in La.C.Cr.P. art. 215.1, authorizes police officers to stop a person in a public place whom they reasonably suspect is committing, has committed, or is about to commit an offense and demand that the person identify himself and explain his actions. Becnel, 04-1266 at 18, 904 So.2d at 852.
The "reasonable suspicion" needed for an investigatory stop is something less than probable cause and is determined under the facts and circumstances of each case by whether the officer had sufficient facts within his knowledge to justify an infringement on the individual's right to be free from governmental interference. Burns, 04-175 at 5, 877 So.2d at 1075-76. The facts upon which an officer bases an investigatory stop should be evaluated in light of the circumstances surrounding the incident. A reviewing court is to take into consideration the totality of the circumstances and give deference to the inferences and deductions of a trained police officer that might elude an untrained person. Burns, 04-175 at 5, 877 So.2d at 1076. Factors that may support reasonable suspicion for an investigatory stop include an officer's experience, his knowledge of recent criminal patterns, and his knowledge of an area's frequent incidence of crimes. Id.
The Fourth Amendment's purpose is not to eliminate all contact between the police and citizens. State v. Stanfield, 05-839, p. 6 (La.App. 5 Cir. 3/14/06), 925 So.2d 710, 715. Police officers "have the right to engage anyone in conversation, even without reasonable grounds to believe that they have committed a crime." State v. Johnson, 01-2436, p. 3 (La.1/25/02), 806 So.2d 647, 648 (per curiam) (quoting State v. Duplessis, 391 So.2d 1116, 1117-18 (La. 1980) (citations omitted)). The police do not need probable cause to arrest or reasonable cause to detain an individual each time they attempt to approach a citizen. State v. Belton, 441 So.2d 1195, 1199 (La. *255 1983), cert, denied, 466 U.S. 953, 104 S.Ct. 2158, 80 L.Ed.2d 543 (1984).
The two officers in this case were experienced. They were patrolling in a high crime area, known for numerous arrests for distribution of cocaine, other narcotics, and weapons violations. The Defendant was hiding behind a low wall when they approached, and ducked when the officers looked his way, indicating he did not want to be seen by the police. When a voluntary conversation was initiated, the Defendant appeared nervous, he was shaking and he stuttered when he spoke to them.[2]
The officers had the right to engage the Defendant in conversation, even absent reasonable grounds to believe that he had committed a crime. See, Johnson, 01-2436 at 3, 806 So.2d at 648. In addition, even if this was an investigatory stop, there was reasonable suspicion to stop the Defendant. Although an individual's presence in a high-crime area alone is insufficient to justify an investigatory stop, his presence in a high-crime area, coupled with nervousness, startled behavior, flight or suspicious actions upon the approach of the officers, gives rise to reasonable suspicion for an investigatory stop. Burns, 04-175 at 5-6, 877 So.2d at 1076.[3] Thus, we find that the stop was lawful.
We next find that the outer-clothing patdown was justified under La. C.Cr.P. art. 215.1 B, which states that when a law enforcement officer questions a person pursuant to a Terry stop and reasonably suspects that he is in danger, he may frisk the outer clothing of the person for a dangerous weapon, and if he suspects that the person possesses a dangerous weapon, he may search the person.
In this case, the Deputies testified that they conducted a weapons frisk of the Defendant's outer garments for officer safety. We find that the outer garment search was lawful under these facts.
Furthermore, under State v. Hill, 97-2551 (La.11/6/98), 725 So.2d 1282, the search of the inside of Defendant's pants was lawful as it was conducted incidental to the lawful arrest.
In Hill, the evidence was seized after the officers discovered the outstanding arrest warrants, arrested the defendant, and conducted a lawful search incident to his arrest on the warrants. Hill, 97-2551 at 8, 725 So.2d at 1286. The Louisiana Supreme Court found that, even if the officers did not have the requisite reasonable suspicion to conduct a Terry stop, any taint which might have been caused by such conduct was dissipated by the intervention of the discovery of the outstanding arrest warrants.
Although the Defendant here classifies the "field interview" as a "fishing expedition," the deputies' actions were justified. "Inherent in an officer's right to *256 make an investigatory stop of an individual and to demand his name, address, and explanation of his actions is the right to detain the subject temporarily to verify information given or to obtain information independently of his cooperation." State v. Parnell, 07-37, p. 10 (La.App. 5 Cir. 5/15/07), 960 So.2d 1091, 1097-98, writ denied. 07-1417 (La.1/7/08), 973 So.2d 733 (citing State v. Broussard, 00-3230, p. 2 (La.5/24/02), 816 So.2d 1284, 1286).
The deputies in this case filled out a field interview card which included the Defendant's name and address, and then conducted a NCIC check. That check disclosed that the Defendant had an outstanding narcotics warrant which provided probable cause for his arrest. See, State v. Stamp, 98-193, p. 5 (La.App. 5 Cir. 7/28/98), 718 So.2d 531, 533 (citing LSAC.Cr.P. art. 213(4)). After he was arrested, the deputies conducted a search incident to his lawful arrest, a clearly recognized exception to a warrantless search. In a search incident to a lawful arrest, the officer may search the suspect's person and the area within his immediate control to remove weapons and prevent the destruction of evidence. State v. Joseph, 02-717, p. 3 (La.App. 5 Cir. 6/27/03), 850 So.2d 1049, 1051, writ denied, 04-2404 (La.6/17/05), 904 So.2d 686 (citing Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969)). The facts herein show that the officers lawfully conducted the search and seizure of the Defendant. Thus, the trial judge did not err in denying the Defendant's motion to suppress the evidence.

ERROR PATENT
The record was reviewed for additional patent errors in accordance with La. C.Cr.P. art. 920. See, State v. Oliveaux, 312 So.2d 337, 338 (La.1975); State v. Polizzi, 05-478, p. 18 (La.App. 5 Cir. 2/14/06), 924 So.2d 303, 315.
Our review discloses discrepancies among minute entries, commitments and transcripts.
Although the transcript reflects that the Defendant made oral motions for appeal on June 11, 2007, and on June 21, 2007, the Defendant's oral motions for appeal do not appear in the June 11, 2007, minute entry or the June 21, 2007, commitment. Also, the commitment does not reflect the Defendant's waiver of sentencing delays prior to being sentenced as a habitual offender or that he was advised of his habitual offender rights. The transcript, however, does reflect the oral motions for appeal and that he was advised of his habitual offender rights. In addition, the commitment states that the first two "sentence" is to be served without benefit of parole, probation, or suspension of sentence. In the transcript, the trial judge ordered the first two years of the Defendant's sentence to be served without benefit of parole, probation, or suspension of sentence.[4]
Further, the minute entry from the June 11, 2007, jury trial reflects that the Defendant was charged with "SCHEDULE II DIST/WITD OF A CDS" and was found guilty as charged. The June 21, 2007, commitment states that the Defendant was charged with and convicted of "DIST/WITD OF A CDS-COCAINE." The Defendant was actually charged with and convicted of possession with intent to distribute cocaine.
In State v. Addison, 05-378, p. 23 (La. App. 5 Cir. 12/27/05), 920 So.2d 884, 898-99, writ denied, 06-1087 (La.11/9/06), 941 So.2d 36, the commitment reflected the *257 defendant was found guilty of count one, "DIST/WITD OF A CDS-MARIJUANA." The transcript, however, stated that the defendant was found guilty of possession with intent to distribute marijuana. This Court remanded this matter to allow the trial judge to correct the commitment to conform to the transcript and other parts of the record.
Generally, when there is a discrepancy between the minutes and the transcript, the transcript prevails. State v. Lynch, 441 So.2d 732, 734 (La.1983). Based on the foregoing, we will remand this matter to the trial judge for correction of the commitment and the minute entry to conform to the transcript and other parts of the record.
CONVICTION AND SENTENCE AFFIRMED; CASE REMANDED FOR CORRECTIVE ACTION.
NOTES
[1] Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).
[2] Deputy Blandford had nine years of law enforcement experience, and Deputy Giacona had eight years of experience.
[3] Compare Stanfield, 05-839 at 8-9, 925 So.2d at 717, where this Court found the officers did not have reasonable suspicion to stop the defendant when he and his companions moved to an unlit area between two buildings. This Court found that their desire not to be observed or disturbed by the police, even in a high crime area, did not create reasonable suspicion of criminal activity. Stanfield is distinguishable from the present case. In Stanfield, the officer was unable to articulate sufficient knowledge of facts and circumstances to justify the infringement and, instead, was only able to say he was concerned that one of the subjects had a gun, admitting his sensitivity about his safety due to recent experience he had in the area. In the present case, however, Deputy Blandford articulated facts other than defendant's attempt to hide in a high crime area.
[4] It is noted that defendant's original sentence was vacated, and he was re-sentenced as a multiple offender.