*698
 
 FREDERICKA HOMBERG WICKER, Judge.
 

 |Jn this criminal proceeding, defendant/appellant Travis Turner appeals his guilty plea conviction of possession of a firearm by a felon in violation of La.R.S. 14:95.1 and his 10-year sentence. Mr. Turner entered a
 
 Crosby
 
 guilty plea
 
 [1]
 
 , reserving his right to appeal the denial of his motion to suppress evidence.
 
 [2]
 
 For the reasons that follow, we affirm.
 

 On August 5, 2008, Mr. Turner pleaded guilty as charged. The trial judge sentenced him to the negotiated 10-year hard labor sentence without benefit of parole, probation or suspension of sentence. Before that the trial judge conducted a suppression hearing and denied the motion to suppress.
 

 | ¡¡Suppression Hearing
 

 Officer Robert Goertz was the sole witness. He testified that at approximately 1:50 a.m. on April 21, 2005, he was on patrol in the 2500 block of Illinois Avenue in Kenner when he observed several males standing in a parking lot outside an apartment complex. He explained the area was being patrolled as the result of anonymous calls about possible drug activity. Officer Goertz stated he decided to approach the men to conduct field interviews.
 

 Mr. Turner was walking away when he approached. Officer Goertz called out to Mr. Turner because he wanted to question him. In response, Mr. Turner swung a bottle of Jim Seagram at Officer Goertz so hard that Mr. Turner fell to the ground. A brief scuffle ensued and in the end Mr. Turner was handcuffed. A “pat down” search revealed a loaded revolver in Mr. Turner’s back right pocket and a box of ammunition in his front sweatshirt pocket.
 

 Law
 

 The State bears the burden of proof in establishing the admissibility of evidence seized without a warrant. La.C.Cr.P. art. 703(D);
 
 State v. Honeycutt,
 
 08-126, p. 6 (La.App. 5 Cir. 5/27/08), 987 So.2d 250, 253. The trial judge’s decision to deny a motion to suppress is afforded great weight and will not be set aside unless the preponderance of the evidence clearly favors suppression.
 
 Id.
 
 at 6, 987 So.2d at 253-54.
 

 It is well-established that law enforcement officers have the right to stop and interrogate one reasonably suspected of criminal activity. La.C.Cr.P. art. 215.1;
 
 Terry v. Ohio,
 
 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968);
 
 State v. Belton,
 
 441 So.2d 1195, 1198 (La.1983),
 
 cert. denied,
 
 466 U.S. 953, 104 S.Ct. 2158, 80 L.Ed.2d 543 (1984). In order to conduct such an investigatory stop, the police officer must have reasonable suspicion that the person is committing, has 1 committed, or is about to commit an offense. Reasonable suspicion is something less than probable cause and is determined under the facts and circumstances of each case by whether the officer had sufficient facts within his
 
 *699
 
 knowledge to justify an infringement on the individual's right to be free from governmental interference.
 
 State v. Honeycutt, supra
 
 at 7, 987 So.2d at 254.
 

 Although reasonable suspicion is required for a police officer to stop an individual, it is not required every time an officer approaches a citizen in a public place. Police officers possess the same right as any citizen to approach an individual and ask a few questions.
 
 State v. Jackson,
 
 00-3083, p. 3 (La.3/15/02), 824 So.2d 1124, 1126 (per curiam),
 
 citing Florida v. Bostick,
 
 501 U.S. 429, 111 S.Ct. 2382, 115 L.Ed.2d 389 (1991). A police officer’s action of merely approaching an individual does not implicate the protections of the Fourth Amendment.
 
 State v. Jackson, supra
 
 at 3, 824 So.2d at 1126.
 

 For purposes of the Fourth Amendment, a person is “seized” when that person submits to the police show of authority or is physically contacted by the police.
 
 California v. Hodari D.,
 
 499 U.S. 621, 111 S.Ct. 1547, 113 L.Ed.2d 690 (1991);
 
 State v. Sylvester,
 
 01-607, p. 3 (La.9/20/02), 826 So.2d 1106, 1108. Under the Louisiana Constitution, a person is also “seized” when an actual stop is imminent. An actual stop is imminent “ ‘when the police come upon an individual with such force, that regardless of the individual’s attempts to flee or elude the encounter, an actual stop of the individual is virtually certain [to occur].”’
 
 State v. Sylvester, supra, quoting State v. Tucker,
 
 626 So.2d 707, 712 (La.1993). Factors to consider in determining whether an actual stop is imminent are the proximity of the police in relation to the defendant at the outset of the encounter, whether the individual has been surrounded by the police, whether the police approached the individual with their weapons drawn, whether the police and/or the individual are Ron foot or in motorized vehicles during the encounter, the location and characteristics of the area where the encounter takes place and the number of police officers involved in the encounter.
 
 State v. Stanfield,
 
 05-839, p. 7 (La.App. 5 Cir. 3/14/06), 925 So.2d 710, 716.
 

 In its reasons for denying the motion, the trial court concluded that Officer Goertz had reasonable suspicion to approach Mr. Turner for a field interview after observing the congregating of males at 1:53 a.m. in an area where there had been anonymous reports of drug activity. We conclude that the ruling of the trial judge denying Mr. Turner’s motion to suppress the evidence was correct, but not for the grounds that the trial judge stated.
 

 Assignments of Error
 

 The Police Encounter
 

 Appellate counsel and Mr. Turner
 
 [3]
 
 both argue that the trial court erred because there was no reasonable suspicion to justify the investigatory stop. Counsel contends that Mr. Turner was seized the moment Officer Goertz approached him to conduct a field interview because a stop was imminent. Counsel and Mr. Turner maintain that at the time Officer Goertz approached there was no reasonable suspicion that a crime had been, was being or would be committed. They assert that the anonymous tips of possible drug activity were insufficient to justify an investigatory stop. Counsel argues that there were no indicia of reliability and no independent corroboration of the tip. Counsel further contends there was no evidence regarding Officer Goertz’s experience or knowledge of the area as a high crime area.
 

 
 *700
 
 The State first argues that there was reasonable suspicion to stop the defendant for these reasons:
 

 | „The officer was patrolling an area in which there had been several complaints of drug activity. When he arrived, he spotted the defendant and others standing near an apartment complex. Upon the officer’s approach on foot, the defendant attempted to flee by walking away. The defendant’s presence in the early morning hours in a known crime area coupled with his flight upon the officer’s approach was sufficient to justify an investigatory stop.
 

 Alternatively, the state argues that even if the officer lacked the requisite reasonable suspicion, he still had the right to engage the defendant in conversation without reasonable grounds to believe that he committed a crime. Upon approaching the defendant, the officer never indicated to him that a detention was imminent. There were no guns drawn and the defendant was not surrounded by the police. The officer never ordered the defendant to submit to his authority and he never attempted to assert any official authority over the defendant by ordering or signaling him to stop. In fact, he had not yet physically restrained the defendant when the defendant hit the officer with a bottle. Therefore the defendant was never seized for purposes of the Fourth Amendment during the initial encounter.
 

 Counsel argues the facts of the case are identical to
 
 State v. Camese,
 
 00-1479 (La.App. 5 Cir. 4/11/01), 786 So.2d 763, where this Court reversed the trial court’s denial of a motion to suppress after finding there was no reasonable suspicion for an investigatory stop. In
 
 Camese,
 
 the officer observed the defendant standing on a sidewalk in a known drug area. The officer approached the defendant in an attempt to conduct a field interview. In the process, the officer conducted a pat down search which revealed a hard object in the pocket of his pants that was determined to be a syringe filled with liquid cocaine. This Court found there was nothing to indicate the defendant was engaged or about to be |7engaged in criminal activity and, therefore, the officer lacked reasonable suspicion to conduct an investigatory stop.
 

 Camese
 
 is distinguishable. Unlike the present ease, the officer in
 
 Camese
 
 conducted a pat down search pursuant to an investigatory stop lacking reasonable suspicion for doing so. In contrast, in the present case, Mr. Turner walked away when Officer Goertz approached and there was no “pat down” search until after his arrest for swinging the bottle at the officer. The instant case turns on the type of police encounter that occurred prior to Mr. Turner’s swinging the bottle. Stated differently, the issue is whether the defendant was “seized” prior to Mr. Turner’s swinging the bottle.
 

 In
 
 State v. Sylvester, supra,
 
 the Louisiana Supreme Court determined the encounter between the police officers and the defendant did not constitute an investigatory stop for which reasonable suspicion was required. In
 
 Sylvester,
 
 the officers were on patrol in response to various citizen complaints of drug activity in a specific area when they observed two men inside a parked vehicle. When the officers approached the vehicle in their police unit, the occupants fumbled around as if trying to hide something. The officers then parked their vehicle in front of the men’s vehicle and one of the officers exited. When the officer exited his unit, the defendant jumped out of the car with a clenched fist. The officer ordered him to turn around and put his hands on the car. The defendant complied and a syringe fell to the ground.
 

 The Supreme Court found the initial encounter between the officer and the de
 
 *701
 
 fendant did not implicate the Fourth Amendment. The Supreme Court noted that “ ‘[t]he proposition that police officers can approach individuals as to whom they have no reasonable suspicion and ask them potentially incriminating questions ... is by no means novel; it has been endorsed by the Court any number of times.’ ” |8 Id. at 4, 826 So.2d at 1108,
 
 quoting Florida v. Bostick, supra,
 
 501 U.S. at 439, 111 S.Ct. at 2388. The Supreme Court explained a stop did not occur until the officer ordered the defendant to turn and place his hands on the car and the defendant complied.
 
 State v. Sylvester, supra.
 

 Also, in
 
 State v. Thomas,
 
 98-1024 (La.App. 5 Cir. 3/10/99), 734 So.2d 39, this Court found there was no “seizure” within the meaning of the Fourth Amendment when the officers first approached the defendant. In
 
 Thomas,
 
 the officers were on patrol in a high crime and high narcotic trafficking area when they observed the defendant standing on the sidewalk. One of the officers recognized the defendant as a person who had been frequently interviewed and arrested. The officers drove up to the sidewalk, exited their vehicle and approached the defendant. The testifying officer stated he and his partner had no particular reason to believe the defendant was committing a crime and explained his purpose in approaching the defendant was to conduct a field interview to determine what the defendant was doing in the area. The officers asked the defendant his name, ran it through the computer and discovered that the defendant had an outstanding
 

 arrest warrant. They arrested the defendant and conducted a pat down, which revealed no contraband.
 

 In finding that the encounter between the officers and the defendant did not constitute a stop, this Court noted that no weapons had been drawn, the police unit’s lights had not been activated and the defendant gave the officers his name upon request. This Court commented that nothing indicated the officers coerced the defendant or that he was not free to leave or walk away. This Court further noted, with significance, that the pat down did not occur until after it was discovered that the defendant had an outstanding warrant.
 

 |9 Similar to the officer in
 
 Thomas,
 
 in the present case Officer Goertz testified he had no reason to believe that Mr. Turner had committed a crime or would be committing a crime and that he approached Mr. Turner to conduct a field interview. However, instead of responding to the police officers like the defendant in
 
 Thomas,
 
 Mr. Turner started to walk away when Officer Goertz approached.
 

 A citizen has the legal right to walk away from the encounter or not respond.
 
 State v. Neyrey,
 
 383 So.2d 1222, 1224 (La.1979). There is nothing in the record that shows Officer Goertz asserted any type of authority over Mr. Turner before he swung the bottle at the officer. The record does not show Officer Goertz had his weapon drawn, activated his police unit’s lights, physically contacted Mr. Turner, or ordered Mr. Turner to stop.
 
 [4]
 
 “The
 
 *702
 
 police do not seize a person simply by identifying their presence and approaching an individual without taking any additional measures to assert their authority over the person that would not be expected from the encounter if it had occurred with an ordinary citizen.”
 
 State v. Dobard,
 
 01-2629, p. 8 (La.6/21/02), 824 So.2d 1127, 1133.
 

 Furthermore, at the point that Mr. Turner swung the bottle, an actual stop of Mr. Turner was not imminent. Officer Goertz had not yet indicated by word or action that a forcible detention was about to occur. Officer Goertz had used no force and had not come upon Mr. Turner with such force that an actual stop was virtually certain regardless of any attempt by Mr. Turner to flee or elude the | inencounter. The record shows Officer Goertz simply called to Mr. Turner as he was walking away that he wanted to question him.
 

 Thus, contrary to Counsel’s and Mr. Turner’s assertions, Mr. Turner was not seized at the time he swung the bottle at Officer Goertz. Therefore, the officer did not need reasonable suspicion to justify an investigatory stop.
 

 We also note that once Mr. Turner reacted to the approach of the officer by swinging a bottle at him, Officer Goertz had probable cause to arrest him for assault on a police officer. The officer testified that he “charged” Mr. Turner with aggravated battery in addition to the instant charge. The subsequent “pat down” search that revealed the firearm was a legal search incident to an arrest.
 
 [5]
 

 As such, this assignment lacks merit because the motion to suppress was properly denied.
 

 Hearsay/Right to Confrontation
 

 In his
 
 pro se
 
 supplement, Mr. Turner argues that the testimony of Officer Goertz regarding anonymous callers was inadmissible hearsay violating his right to confrontation guaranteed by the Sixth Amendment of the United States Constitution and Article 1, § 16 of the Louisiana Constitution. He complains that the officer at the suppression hearing gave unreliable hearsay testimony when he testified that he was in the area because of anonymous callers. According to Mr. Turner, the officer was only present there as a result of a mere hunch. He asserts that the hunch is insufficient to establish reasonable grounds to stop a person. He also contends that the erroneous admission of hearsay was prejudicial and attributable to the trial court’s reason for denying the motion to suppress and thus it was far from harmless.
 

 InAs previously stated, we conclude that Mr. Turner was not seized at the time he swung the bottle at Officer Goertz. Therefore, the officer did not need reasonable suspicion to justify an investigatory stop.
 

 
 *703
 
 Turning to the hearsay and confrontation arguments, we note that trial counsel did not object to inadmissible hearsay or an infringement of his right to confrontation and, therefore, waived the issue on appeal. La.C.Cr.P. art. 841.
 

 In any event, hearsay evidence is permitted in a motion to suppress hearing.
 

 In 1980, the Louisiana Supreme Court explained that the hearsay rule is not required to be applied at suppression hearings.
 
 State v. Smith,
 
 392 So.2d 454, 458, n. 6 (La.1980) (Citations omitted). Effective January 1, 1993, the Louisiana Code of Evidence Article 1101 was enacted.
 

 Except as otherwise provided by legislation, the provisions of the Code of Evidence apply to the determination of questions of fact in all contradictory judicial proceedings. La.C.E. art. 1101(A)(1). Article 1101 excludes certain proceedings from the application of the Code and relaxes the Code’s application in certain proceedings.
 

 Under subsection (C) of Article 1101 certain proceedings are excluded from application of the Code, but a hearing on a motion to suppress is not one of the listed excluded proceedings. However, in subsection (B), application of the Code is relaxed for certain proceedings and the provisions are made applicable only to the extent that the provisions facilitate the legislative objectives underlying the proceeding. It provides, in pertinent part, as follows:
 

 B. Limited applicability. Except as otherwise provided by Article 1101(A)(2) and other legislation, in the following proceedings, the principles underlying this Code shall serve as guides to the admissibility of evidence. The specific exclusionary rules and other provisions, however, shall be applied only to the extent that they tend to promote the purposes of the proceeding.
 

 [[Image here]]
 

 | t ¡>(4) Preliminary examinations in criminal cases, and the court may consider evidence that would otherwise be barred by the hearsay rule.
 

 [[Image here]]
 

 (8) Hearings on motions and other summary proceedings involving questions of fact not dispositive of or central to the disposition of the case on the merits, or to the dismissal of the case, excluding in criminal cases hearings on motions to suppress evidence and hearings to determine mental capacity to proceed.
 

 The Official Comment (i) pertinently provides:
 

 (i) [S]ubparagraph (B)(8) coupled with Paragraph A continues in effect the requirement that formal evidentiary rules generally apply in hearings on motions to suppress evidence.
 

 The comment, however, does not constitute a part of the law. La.C.Cr.P. art. 10. Although the official comment suggests that hearsay evidence is inadmissible in hearings on motions to suppress evidence, that interpretation was not accepted by the Louisiana Supreme Court in
 
 State v. Jones,
 
 07-1865 (La.9/18/07), 964 So.2d 319.
 
 Jones
 
 followed
 
 State v. Smith,
 
 392 So.2d 454, 458, n. 6 (La.1980), a case that predated the enactment of the evidence code, in holding that the hearsay rule is not required to be applied at a suppression hearing.
 
 [6]
 

 
 *704
 
 Likewise, this circuit has held that the prohibition against hearsay evidence does not apply to suppression hearings.
 
 State v. Esteen,
 
 02-1241 (La.App. 5 Cir. 4/29/03), 846 So.2d 167, 176,
 
 writ denied,
 
 03-1486 (La.1/9/04), 862 So.2d 978,
 
 citing State v. Smith,
 
 392 So.2d 454, 458, n. 6 (La.1980);
 
 State v. James,
 
 99-0423, p. 11 (La.App. 4 Cir. 2/16/00), 755 So.2d 995, 1002,
 
 writ denied,
 
 00-0872 (La.3/9/01), 786 So.2d 112.
 

 Moreover, the officer’s reference to anonymous callers was nonhearsay because the statement was not offered for the truth of the matter asserted, but |13merely to explain the officer’s actions in patrolling the area. La.C.E. art. 801(C).
 
 [7]
 
 Therefore, Mr. Turner was not denied his right to confrontation.
 
 See: Crawford v. Washington,
 
 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004).
 

 Accordingly, this assignment lacks merit.
 

 Error Patent
 

 In brief, the State indicates that it conducted an error patent review and noticed that the sentence was illegally lenient because the trial judge failed to impose the mandatory fine. Likewise, we have reviewed the record for errors patent, according to La.C.Cr.P. art. 920;
 
 State v. Oliveaux,
 
 312 So.2d 337 (La.1975);
 
 State v. Weiland,
 
 556 So.2d 175 (La.App. 5 Cir.1990).
 

 The trial judge failed to impose the mandatory fine of “not less than one thousand dollars nor more than five thousand dollars” under La.R.S. 14:95.1(B). Thus, Mr. Turner received an illegally lenient sentence. The State, however, did not object at the time of sentencing and did not appeal the error. In brief, it asks this Court to remand for resentencing in order to impose the mandatory fine.
 

 The Louisiana Supreme Court has held that an appellate court has the authority to correct an illegally lenient sentence that fails to impose a mandatory fine.
 
 State v. Decrevel,
 
 03-0259, p. 1 (La.5/16/03), 847 So.2d 1197, 1197 (per curiam). However, this court is not required to take such action.
 
 See, State v. Kerlec,
 
 06-838, p. 8 (LaApp. 5 Cir. 4/11/07), 957 So.2d 810, 814.
 

 In certain circumstances, this Court, while finding the omission of the imposition of a fine in such cases to be error, has, nevertheless, as a matter of | udiscretion, refrained from amending the defendant’s sentence to impose a fine.
 
 See, e.g. State v. Young,
 
 07-988 (La.App. 5 Cir. 6/19/08), p. 10, 988 So.2d 759, 763
 
 citing State v. Paul,
 
 05-612 (La.App. 5 Cir. 2/14/06), 924 So.2d 345, 357.
 
 Compare: State v. Adams,
 
 07-355, p. 2 (La.App. 5 Cir. 11/27/07), 973 So.2d 777, 777 where the State appealed the illegally lenient sentence.
 

 In this case, the issue was not raised by the State in the trial court or by an appeal. The State merely argued it in its opposi
 
 *705
 
 tion brief. Under similar circumstances, we have declined the State’s request to remand the case for imposition of a fine.
 
 Kerlec, supra
 
 at 8, 957 So.2d at 815.
 

 Decree
 

 Accordingly, for the reasons stated, Mr. Turner’s conviction and sentence are affirmed.
 

 CONVICTION AND SENTENCE AFFIRMED.
 

 [1]
 

 . State
 
 v. Crosby,
 
 338 So.2d 584 (La.1976).
 

 [2]
 

 . The State notes in brief that although Mr. Turner pleaded guilty under Crosby, he did not expressly reserve his right to appeal the suppression ruling. We disagree. Before accepting the plea, the trial judge entered into a colloquy with Mr. Turner. He specifically asked him the following questions: (1) Did he understand that he was pleading under
 
 Crosby?
 
 (2) Did he understand this meant that he was going to appeal the suppression ruling? (3) Did he understand that if he lost on appeal, his plea would stand? (4) Did he understand that if he won on appeal, the case would return to the trial judge and they would decide what to do? Mr. Turner agreed that this was his understanding. Thus, Mr. Turner made a specific reservation of the sole pre-trial judgment to contest on appeal and assigned error to the judgment that was contained in that reservation.
 

 [3]
 

 . Mr. Turner filed a supplement to counsel's appellate brief.
 

 [4]
 

 .
 
 See State v. Dobard,
 
 01-2629, p. 8 (La.6/21/02), 824 So.2d 1127, 1132-33, where the Louisiana Supreme Court found the defendant was not seized when the officers walked into a bar and approached defendant. The Supreme Court noted the officers had not drawn their weapons, physically contacted the defendant, ordered or signaled him to stop, or otherwise asserted any authority over him when the defendant panicked and discarded the crack cocaine.
 
 See also State v. Hill,
 
 01-1372, pp. 9-10 (La.App. 5 Cir. 5/15/02), 821 So.2d 79, 85, where this Court likewise found no seizure of the defendant when an officer approached him while he was in his parked car to question him about what he was doing in the area. The officer asked the defendant to step out of his car and come
 
 *702
 
 talk to him. This Court noted the officer did not have his lights or siren activated, did not have his weapon drawn, and did not touch or conduct a pat down search of the defendant prior to the discovery of the contraband in plain view on the front seat of the car.
 
 Compare State v. Stanfield,
 
 05-839, p. 8 (La.App. 5 Cir. 3/14/06), 925 So.2d 710, 716-17, where this Court found an actual stop of the defendant was imminent when the officers drove their police car from a distance of 50 feet to within 15 feet of the defendant and his companions and lit the area where the defendant was standing with both headlights and strobes. Additionally, the defendant and other suspects were ordered to step toward the police vehicle and place their hands on it.
 

 [5]
 

 . "It is well established searches incident to arrest conducted immediately before formal arrest are valid if probable cause to arrest existed prior to the search.”
 
 State v. Sherman,
 
 05-0779, p. 9 (La.4/4/06), 931 So.2d 286, 292.
 

 [6]
 

 . In
 
 State v. Castleberry,
 
 98-1388 (La.4/13/99), 758 So.2d 749,
 
 cert. denied, Castleberry v. Louisiana,
 
 528 U.S. 893, 120 S.Ct. 220, 145 L.Ed.2d 185 (1999), the Supreme Court interpreted Subsection (B)(8), which refers to suppression and mental capacity hearings as "excluded.” The Court held that the hearsay rule did not apply to a hearing on the defen
 
 *704
 
 dant's mental capacity to proceed with trial. Therefore, it follows that the Court would interpret the Subsection to mean the same as to motions to suppress hearings.
 

 [7]
 

 .
 
 Compare: State v. Young,
 
 99-1264, p. 9 (La.App. 1 Cir. 3/31/00), 764 So.2d 998, 1005. In
 
 Young,
 
 the First Circuit considered an objection to hearsay at the trial. It held that the police officer's testimony about citizen complaints was not hearsay. The court recognized that the content of an informant’s tip may not be used at trial by a law enforcement officer because the testimony violates the accused's right to confront and cross-examine his accusers. 99-1264 at 8, 764 So.2d at 1005 (Citation omitted). The court held that the officer's testimony that he had been getting complaints from citizens about narcotic trafficking in the area was relevant and not hearsay. The testimony was used to explain the course of the police investigation and why he specifically went to the area in question.
 
 Id.